Dickman, J.
The facts necessary and sufficient for the determination of the material issue in this action, are disclosed by the petition, answer, and demurrer to the answer, and are as follows : The Hamilton Gas-light and Coke Company was organized and duly incorporated in the year 1855, under the general incorporation act of May 1, 1852, for the purpose of supplying gas for the lighting of the streets, and public and private buildings in the city of Hamilton, Ohio. At the time of its organization, by virtue of the provisions of an ordinance of the city of Hamilton passed in the year 1855, there was granted to the company, and it thereafter had, the use of the streets of the city for the purpose of laying gas-pipes and mains, and supplying gas to the city and its inhabitants, for the period of twenty years, to wit, until the year 1875. Since the year 1875, the city has used the gas of the company only in accordance with the terms of various contracts entered into between the city and the company, from time to time, the last of which contracts expired January 1, 1889. And, since the last named date, there has been no contract existing between the parties; the city has declined to use the company’s gas, and has provided other means for lighting its streets. For the purpose of manufacturing gas, the company erected gas works, and laid gas-pipes and mains, to the probable extent of thirty miles, throughout the city, for the furnishing of gas for public and private consumption. It is conceded by the defendant that the company has complied with all the provisions of the law of Ohio relating to gas companies, and with all the ordinances in that behalf of the city of Hamilton, and is entitled to all the rights, privi *65 leges and immunities secured to such companies by the laws of the state.
The city of Hamilton is a municipal corporation organized under the laws of the state of Ohio, and had, at the last federal census, a population of 12,122, and a corporate area of about three square miles. On the 4th day of September, 1888, the city, by its council, on the petition of a large number of its inhabitants, duly passed an ordinance providing for the submission to the qualified voters the question of issuing the city’s bonds to the amount of $150,000, for the purpose of gas works to be erected by the city. Legal notice having been given, the question was voted upon by the electors at the general election held on the 6th dajr of November, 1888, and resulted in 2,412 votes being cast for the issue of bonds, and fifty-nine votes against such issue. Upon that decision of the electors, the city council, on the 20th day of November, 1888, adopted a resolution that, it was deemed expedient and for the public good, to erect gas works at the expense of the corporation. .On the 18th day of December, 1888, an ordinance was passed by the council, providing for the issue of bonds, for the purpose of erecting such works by the city, to the extent of $150,000. The entire issue was sold for more than the par value thereof, and the proceeds of the sale were turned over to the city treasurer, for the erection and completion of the proposed works. On the 7th day of May, 1889, trustees of the gas works were appointed by the city council, who duly qualified, organized their board, and proceeded to the erecting of the works in accordance with the decision of the citizens and tax-payers of the city of Hamilton. The board of trustees so appointed purchased land for the erection thereon of the proposed gas works, agreed upon plans and details for the construction of such works, entered into contracts for the furnishing of material and the performance of labor, paid large sums of money upon contracts for material furnished and labor performed, and in the execution of contracts, gas-pipes were extensively laid in the streets of the city. The defendant alleges, that the gas works are being built by the city for the *66 purpose of furnishing the public lighting to the city, and that no action has been taken toward furnishing gas for private consumption; but, the defendant cannot say, what action, if any, the city will in the future take toward furnishing gas for private consumption.
1. The only material question in this case is, whether upon the facts as above stated, the city of Hamilton has corporate power to erect its own gas works, for the purpose of furnishing the public lighting to the city.
The laws relating to gas companies when organized, and in force at the time the Hamilton Gas-light Company was incorporated, are substantially embraced in the Revised Statutes, between sections 2478 and 2491 inclusive. The material questions to be determined in this case arise under sections 2480, 2482, 2485, and 2486, the last two sections having been passed since the incorporation of the company.
Section 2480 provides that, if gas companies when required by the council to lay pipes and light streets, alleys, public grounds or buildings, refuse or neglect for six months after being notified by the authority of the council, to comply with such requirement, the council may laj' pipes and erect gas works, for lighting such streets, alleys, or public grounds, and all other streets, alleys, and public grounds not already lighted; and such companies shall thereafter be precluded from using or occupying any of the streets, alleys, public grounds or buildings, not already furnished with gas-pipes of such companies.
Section 2482 provides that, a neglect to furnish gas to the citizens, and other consumers of gas, or to the corporation, by any company, in accordance with the prices fixed and established by the council, from time to time, shall forfeit all rights of such company under the charter of which it was established; and the council may proceed to erect, or, by ordinance, empower any person to erect gas works, for the supply of gas to such corporation and its citizens.
Section 2485 makes it unlawful for any council to agree by ordinance, contract, or otherwise, with any person or persons, for the construction or extension of gas works for man *67 ufacturing or supplying the corporation or its inhabitants with gas, which shall give or continue to any person or per-: sons making such agreements with the council the exclusive privilege of using the streets, lanes, commons, or alleys, for the purpose of conveying gas to the -corporation, or the citizens thereof; ...... nor is the council permitted to make any such agreement which shall not secure to the council the right to purchase such works, and all the appurtenances belonging thereto, at any time within the existence of such contract or agreement.
Section 2486 enacts that, “.The council of any city or village shall have power, whenever it may be deemed expedient and for the public good, to erect gas works at the expense of the corporation, or to purchase any gas works already erected therein.”
This provision for the erection of gas works by the city, was first embodied in section 423 of the municipal code, passed May 6, 1869, which, while a codification, enlarged the powers of municipalities as to gas works and lighting corporations, and the same enlarged powers are continued under the revised statutes, without material change. Among the general powers granted to cities, they may light streets, allej's, public grounds and buildings, within the corporation, and provide for laying down gas-pipes; they may appropriate, enter upon, and hold real estate within the corporate limits, for gas works, and “ lighting any public uSe ; ” and may levy taxes for the special purpose of erecting, enlarging, and improving gas works, and for lighting the corporation.
It is urged in behalf of the Hamilton Gas-light Company, that the legislature has declared in sections 2480 and 2482, certain conditions under which the council may build gas works, and that in the absence of those conditions, the city has not such power while there are gas works,.in the municipality that have complied with all the provisions of the law, and met all the demands made upon them. Such an expression of the legislature will, it is said, exclude the right of a city to erect gas works under any other circumstances. Those two sections designate what refusal or neglect on the *68 part of gas companies to meet the requirements of the law, would work a forfeiture of their rights under their charter, and authorize the council to lay pipes, and erect gas works, and exclude a gas company already in operation, from occupying any streets not already furnished with gas pipes of such companies; but such authority is very different from the general power conferred upon the council by section 2486, to construct gas works without reference to the manner in which an existing company may use its franchise.
Section 2486, in plain language, gives the power to the council, either to erect gas works, or to purchase such works already erected. The authority granted is not coupled with any condition or contingency, but is to be exercised when the council may deem it expedient and for the public good. The language is free from ambiguity. The discretionary power would hardly seem consistent with the limitation sought to be imposed, that the council can build gas works only where there are no gas works in the municipality; or where gas companies already organized, refuse or neglect to comply with the requirements of the law as to lighting or laying pipes, or neglect to furnish gas to citizens. The interest of the city may demand that a gas company established and doing business, although complying with all statutes and ordinances, should not continue to enjoy exclusive possession of the field of operation. And it may be deemed expedient, and for the public good, to discourage the growth of a monopoly, by the city’s erecting its own gas works, or encouraging the incorporation of a competing company. Certainly, it would not be a doubtful public policy, to place the city on an independent basis, by clothing it with the power of building its own gas works if an emergency should arise, although there might be a company within the municipality, which fully discharged all its corporate duties. Indeed, the provision in section 2485, rendering it unlawful to give or continue to any gas company the exclusive privilege of using the streets, would seem designed not merely to prevent the sole occupation of the streets by one .company as against another, but also to secure to the municipality the *69 use of the streets, should it conclude to avail itself of the right, granted by the following section, of erecting gasworks.
It is conceded that a municipality within which a gas company has been already formed, may, by a vote of its citizens and by ordinance, authorize the operation of another gas company within its borders. Rev. Stats., section 3551. The municipality may also purchase the gas works of the newly organized company. But it is contended that if two such companies exist at the same time, in the same municipality, and occupying the same territory, the municipal authorities though purchasing could not operate the works of one in opposition to the other; that after such purchase, the law will not permit the city to use its own property for the purpose of lighting its streets for the public safety and convenience, unless it either buys out the other company, or the other company goes out of existence, or fails to discharge its statutory duty. The statdte, it is evident, is not susceptible of such an interpretation, nor has the legislature, in our judgment, hampered by such limitations and conditions, the right of a city to purchase and operate the works of one of two competing gas companies within its borders. And if it may own and use without restriction the plant of one such company, it may well be inquired, why may not the city, so far as the other company is concerned, be authorized to erect its own gas works, whenever it may be deemed expedient- and for the public good.
In its present form, section 2486 was passed many years after the two sections which are reproduced in section 2480 and section 2482. Between the earlier and later statutory provisions we discover no repugnancy, and the canons of statutory construction do not require that either should prevail over the other. The authority given to municipalities by the later section, is distinct from and independent of the power granted by the two antecedent sections. But, if such repugnancy did exist in the pre'sent case, it is one of the settled rules of construction that when, in a statute, there are several clauses which present, as compared with each other, an irreconcilable conflict, the one last in order of date or *70 local position must prevail, whether the conflicting clauses be sections of the same act, or merely portions of the same section. This rule, it has been said, is subject to the modification, that a later clause which is obscure and incoherent will not prevail over an earlier one which is clear and explicit. Eudlich on Interpretation of Statutes, sec. 183. But, the provisions of section 2486 are plain and unequivocal, and of definite import. Where the legislature has used words of plain and definite import, it would be very dangerous to put upon them a construction which would amount to holding that a legislature did not mean what it has expressed. “ The fittest course in all cases where the intention of the legislature is brought into question, is to adhere to the words of the statute, construing them according to their natural import, in the order in which they stand in the act.” Dwarris on Statutes, 583; Rex v. Ramsgate, 6 B. & C. 712.
II. It is urged in behalf of the plaintiff, that the Hamilton Gas-light Company acquired, by its charter, a vested right to supply the public, as well as private consumers with gas at such reasonable prices as the council should fix, and that to authorize the citjr to construct and operate its own gas works, would be to destroy that vested right without due process of law. It may be conceded, that the company acquired the right of laying its pipes and conveying gas to the city and its citizens,• but it never acquired the exclusive franchise of opening and using the streets of the city, for the introduction of pipes and other apparatus for the purpose of thus conveying gas. By sec. 53, of the act of May 1, 1852, under which the company was organized, it was provided as follows: “ Any corporation formed under this act shall have full powers, if a gas company, to manufacture and sell, and to furnish such quantities of gas as may be required in the city, town or village where located, for public and private buildings, or for other purposes; and such corporation shall. have power to lay conductors, for conducting gas through the streets, lands, alleys and squares, in such city, town or village, with the consent of the municipal authorities of said city, town or village, and under such reasonable regulations *71 as they may prescribe.” But this section does not purport to grant, either directly or by the permission of the municipal authorities, an exclusive right to any one company, to lay its conductors for conducting gas through the streets of a city, town or village. A gas company may open the streets and lay down its pipes with the consent of the city, under such reasonable regulations as the city may make; but, the right to give such consent and prescribe such regulations, does not carry with it a power to exclude every other gas company, or to bar the municipality from ever using unoccupied portions of the streets for the same purposes. In State v. Cincinnati Gas Co., 18 Ohio St. 262, 289, the principle is stated, that to enable the city council to grant, by ordinance in the nature of a contract, an exclusive right to use the streets and alleys of the city for the purpose of laying downpipes for carrying gas to be used in lighting the city for a term of twenty-five years, the power must be shown to have been expressly granted, or to be so far necessary to the proper execution of the powers which are expressly granted, as to make its existence free from doubt. Grants by the public are to be strictly construed, and an intention to grant an exclusive privilege or monopoly is not to be implied. Where exclusive privileges are not expressly given by the charter, they should not be held to be conferred. Morawetz on Private Corporations, § 1057; Charles River Bridge v. Warren Bridge, 11 Pet. 536, 549; Tuckahoe Canal Co. v. Tuckahoe Railroad Co., 11 Leigh, 42; Shorter v. Smith, 9 Ga. 517; Parkersburg Gas Co. v. Parkersburg, 30 W. Va. 435, 4 S. E. Rep. 650.
Again, by sec. 54, of the act of 1852, it is enacted: “ The municipal authorities of any city, town or village, in which any gas-light company shall be organized under this act, are hereby authorized to contract with any such corporation, for the lighting the streets, lands, lanes, squares and public places in any such city, town or village.” While the language of this section, properly construed, authorized the municipal authorities to contract with a gas company for lighting the streets and other public places, it is not, in the *72 absence of express authority, to be construed as investing them, by implication, with power to grant by contract, to such company, the exclusive privilege in perpetuity of supplying gas for the public lighting.
The city of Hamilton was not, either under the act of 1852, or under any l.aw subsequently passed, bound to enter into an agreement with the gas company, for supplying with gas the streets and other public places in the corporate limits. It did, however, make contracts with the company, from time to time, for that purpose — the last of which expired by its own limitation, on the first day of January, 1889. That the city performed all its contract obligations, is not denied. And if the city^ did not see fit to further contract, it was beyond the power of the company to compel it to do so. Pursuant to its agreement, the city purchased gas from the company for over thirty years, and then determined to erect its own gas works under the authority which had then been given by the statute. In this, there was no destruction of a corporate franchise or vested right of the company. The company still retains the right to contract with the city for the public lighting, and to furnish gas for private consumption. Its pipes and mains remain undisturbed in the streets, and through them gas may be conducted, as long as the company will manufacture it. Indeed, there has been no interference by the city, with any- of the real or personal property of the company. It is conceded in argument by the gas company, that if the city were to supply for the public lighting, some newly discovered or different agency than gas, such for instance as electricity, the company would have no reason to complain; and yet, the investment of the company would be subject to no greater detriment or loss, if any, by the city’s manufacturing its own gas, than by adopting electricity as a mode of public lighting.
There having been no exclusive franchise granted to the Hamilton Gas-light Company, either to open and use the streets for the introduction of gas pipes and other apparatus, or to supply gas in perpetuum, under contract, to the city of Hamilton for public consumption, and the city having com *73 plied with the terms of all written contracts entered into with the company from time to time, there was no interference with vested rights, nor does section 2486, when construed as authorizing the city to erect its own gas works, become, as to the company, a law impairing the obligation of a contract. In Turnpike Co. v. The State, 3 Wall. 210, the state of Maryland in 1812, incorporated a company to build a turnpike road between Baltimore and Washington. By its charter, the company had power to take tolls, but, iu regard to its privileges ■ generally, there was nothing special about it. In 1831, the same state granted a charter to a railroad company to make a railroad between the same cities, the line of which ran near to and parallel with the track of the turnpike. The turnpike company set up in defense, that the railroad had been made not only under the authority of the state, but to a considerable extent with the state’s money; the state, in addition, managing it largely, and getting from it one fifth of the whole amount received for the transportation of passengers; that by incorporating a company to make a railroad, with the grant of a charter to the turnpike company in force, the state had impaired the obligation of a contract. But, it was said by Justice Nelson, in delivering the opinion of the court: “ The difficulty of the argument in behalf of the turnpike company, and which lies at the foundation of the defense is, that there is no contract in the charter of the turnpike company that prohibited the legislature from authorizing the construction of the rival railroad. ' No exclusive privileges had been conferred upon it, either in express terms, or by necessary implication ; and hence whatever may have been the general injurious effects and consequences to the company, from the construction and operation of the rival road, they are not the subject of legal redress.”
It is argued and claimed, in substance, that, as long as the city of Hamilton continues to light its streets, public grounds and buildings with gas, the Hamilton Gas-light Company, a corporation organized under a general law passed since the adoption of the present state constitution, will have, while *74 it exists and complies with all statutes of Ohio and ordinances of the city relating to gas companies, the exclusive franchise or privilege, as against the city, of manufacturing and furnishing the gas required by the city for such public lighting; and that if the city is allowed, by virtue of the provisions of section 2486 to erect its own gas works, such privilege will be destroyed. The privilege claimed involves the imposition of a burden upon all tax-paying citizens in the municipality, for the purpose of giving a monopoly to a private corporation for an indefinite period.
If, for the sake of the argument, the company ever acquired such a special privilege, it is evident, that the statute empowering any city to erect its own gas works, as effectually revoked and repealed the privilege, as if that had been the declared intent of the statute. By section 2, article 1, of the constitution of 1851, “No special privileges or immunities shall ever be granted, that may not be altered, revoked, or repealed by the general assembly; ” and in connection with this section is to be construed section 2, article 13, which declares that, “ Corporations may be formed under general laws ; but all such laws may, from time to time, be altered ox xepealed.” The general law under which the Hamilton Gas-light Company was formed, was subject to the limitations and reservations contained in these provisions of the constitution. The constitutional provisions entered into the general law, and operated as to all corporations organized under it, in the same manner as a reservation to the legislature embodied in a special charter. Such reservation in a special charter or under a general law, negatives an intention on the part of the legislature to confer irrevocable rights upon the corporators.
In Shields v. The State, 26 Ohio St. 86, a consolidated company was formed by the union of several original and independent railroad companies, in pursuance of the act of April 10,1856 (4 Curwen, 2791). Among the companies forming the consolidation, were two companies chartered and organized before the adoption of the present constitution, and whose charters were, therefore, not subject to the constitu *75 fcional provisions above quoted. It was held that, the consolidated company was a corporation' 'formed under a general law, within the meaning of section‘2, article 13, of the constitution, and as such, was subject to the limitations and reservations contained in that section, and in section 2, article 1, of that instrument; and that the general assembly had power to pass the- act of April 25, 1873 (70 Ohio L. 161), altering and regulating rates of fare chargeable by such consolidated company. The case was taken on error to the Supreme Court of the United States (see 95 U. S. 319), and the judgment of the state court was there affirmed. It was there held that the general assembly did not impair the obligation of a contract by prescribing the rates for the transportation of passengers by the new company, although qne of the original companies was, prior to the adoption of the constitution of 1851, organized under a charter which imposed no limitation as to such rates. The constitutional’provision that, “ no special privileges or immunities shall ever be granted that may not be altered, revoked, or repealed by the general assembly,” entered, it was said by the court, into the act under which the consolidation was made, and rendered the corporation created and the franchises conferred subject to repeal and alteration, just as if they had been expressly declared to be so by the act; and the act of April 25, 1873, in the particular in question, was held to be a legitimate exercise of the reserved power of alteration, and was therefore valid.
The force of the doctrine1 announced in the ease of The Dartmouth College v. Woodward, 4 Wheat. 518, that the creation of a private corporation by charter is such a grant as includes an obligation of the nature of a contrac’t which no state legislature can pass laws to impair, has been, in a large measure, obviated by the practice of reserving to the state the right to alter, revoke or repeal charters, general incorporation laws, and special privileges and immunities. Whether such special privileges and immunities be designated property or a capacity to acquire and hold property, a wise public policy suggests, that they should not be irrevocably *76 placed beyond the sovereign control of the state. The corporeal property of the Hamilton Gas-light Company, real and personal, has remained unimpaired, "but the exclusive franchise claimed by the company, as against the city, would, if it had ever been acquired, be subject to the power vested by the constitution in the general assembly.
Demurrer to the answer overruled, and petition dismissed.