In the Matter of the Application of THE CITY OF BROOKLYN, Respondent, for Authority to Acquire the Property and Franchises of THE LONG ISLAND WATER SUPPLY COMPANY, Appellant.

While the legislature may not destroy and confiscate ·the property and franchises of a corporation, it cannot be restricted in its grants of corporate franchises which are within constitutional limitations, save by its own express agreement, even though the consequences of such a grant may be to entail loss, if not ruin, upon existing corporations through rivalry and competition.

The franchise conferred upon a corporation organized under the act providing for the incorporation of water works companies (Chap. 737, Laws of 1873, amended by chap. 213, Laws of 1881) is not exclusive in its nature ; it does not give to the company the exclusive and permanent right, during the term of the corporate charter, to purvey water to the town or village to supply which it was created, and neither the statute nor the constitutional provision prohibiting legislation impairing the obligation of contracts precludes the grant of a charter tó another company, that has obtained the requisite assent of the municipal authorities, authorizing it to supply water from other sources to the inhabitants of the same town or village.

By such a charter no rights are taken from the public or given to the corporation, beyond those which the words of the charter, by their natural and proper construction, purport to convey.

*Dartmouth College* v. *Woodward* (4 Wheat. 578); *Milhau* v. *Sharp* (27 N. Y. 611); *Mayor, etc.,* v. *S. A. R. R. Co.* (32 id. 272); *People* v. *O'Brien* (111 id. 1), distinguished.

So, also, where a corporation organized under said act entered into a contract with the town for supplying it with water for a term of

years, *held*, that in the absence of an express provision in the contract prohibiting it from so doing, the town was not precluded from making a like grant to or contract with another company for another or further supply, if the public needs required it.

A corporation was organized under said act to supply the town of New Lots with water. Subsequently the town was annexed to the city of Brooklyn. By the Annexation Act (Chap. 335, Laws of 1886) the city was prohibited from supplying water to the territory included in the town until the expiration of the charter of the company or until the city should purchase or acquire its property. *Held*, that this act did not affirm or establish an exclusive right in the company to furnish water; that it did not operate upon it, but simply bore upon the power of the city, its purpose being to protect the company's franchise in case the city did not purchase the corporate property or acquire it by condemnation proceedings as authorized by the act.

Also, *held*, that the provision of said act (§ 5) authorizing the city to acquire the property by proceedings *in invitum* was not violative of the constitutional provisions prohibiting the taking of private property except for a necessary public use, nor was it unconstitutional as authorizing the condemnation of property already devoted to a public use without designating any different or larger public use to which it was to be applied; that the public use for which it was required was sufficiently designated and was of a higher and wider scope than the use to which it was already devoted.

All private property within the state is subject to the right of the legislature to appropriate it for a necessary and reasonable public use, a just compensation being provided to be paid therefor, and there is no distinction in this respect in favor of corporations whose franchises and operations impart to them a *quasi* public character, if in order the better to subserve the public use the appropriation is necessary.

Accordingly, *held*, in proceedings under the act instituted by the city to acquire the property and franchises of the water works company, that the commissioners of appraisal properly refused to consider that the company had a right to supply water so exclusive as to preserve it from rivalry or legislation, and properly valued the franchise upon the assumption that at present the company alone had the right publicly to purvey water to the territory formerly embraced in the town; but that the exclusiveness incident to its right might at any time be taken from it by the legislature or by the local authorities acting under legislation; in determining whether to do this neither would fail to have due regard to the past investments, risks and services of the company and the reasonably just expectations of those who invested money in its work. Reported below, 73 Hun, 499.

(Argued October 10, 1894; decided November 27, 1894.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made December 1, 1893, which reversed an order of Special Term setting aside the report of commissioners of appraisal of the franchise and property of the Long Island Water Supply Company, and which confirmed said report.

The Long Island Water Supply Company was incorporated in 1881, for a term of fifty years, under chapter 737 of the Laws of 1873, and the acts amendatory thereof. At the time of incorporation, these acts constituted the general law, which permitted the organization of water works companies in towns and villages, throughout the state. As a prerequisite to the right to incorporate, the promoters were obliged to apply to the local authorities of the town, or village, and to state in the application certain facts relating to the persons proposing to form the company, the proposed capital stock, the number and character of the shares and the sources from which the water is intended to be supplied. Such an application was made to the proper authorities of the town of New Lots and it was properly acted upon by them and granted. The certificate was, thereupon, filed, as required by the law, and the water works company became a body corporate; having the right to lay pipes, etc., for the delivery of water in the public streets and places and being "authorized and empowered to supply the authorities and inhabitants * * * with pure and wholesome water, at such rates and cost to consumers as they shall agree upon." Shortly after the incorporation, the company entered into an agreement with the town; which provided for the laying of pipes in the streets and avenues, to the extent of fifteen miles thereof, as the authorities might from time to time designate, and for the erection of hydrants, etc. The cost of supplying water was therein limited to the established charges in the city of Brooklyn, and the term of the contract was for 25 years; which was subsequently extended. Subsequently, and in 1886, chapter 335 of the Session Laws of that year was passed;

which provided for the annexation to the city of Brooklyn of the town of New Lots. Authority was provided in that act, by section 5, for the acquisition by the authorities of the city of all the various properties and franchises of this water company, by agreement of purchase; or, in the event of inability to agree, by the right of eminent domain, to be exercised within two years. By another provision of the act, the city was inhibited from supplying water for consumption within the territory, comprehended within the town of New Lots, "until the expiration of the charter of the company, or until the city shall purchase, or acquire the property of the company as in the next section provided." Nothing in the direction of an acquisition of the water company's properties was done, until after the expiration of the period of two years; when, in 1890, an agreement was entered into for their purchase at a price equal to the sum of $1,250,000. This contract of purchase was annulled, as the result of an action brought by a taxpayer of the city. The case came before this court and the action was held maintainable upon the sole ground that the authority to purchase did not outrun the two years mentioned in the annexation act. (*Ziegler* v. *Chapin*, 126 N. Y. 342, 349.)

In 1892, chapter 481 of the Session Laws of that year was enacted; which, reciting that "the public interest requires the acquisition by the city of Brooklyn, for the public use, of the reservoir, wells, machinery, pipes, franchises and all other property of the Long Island Water Supply Company," authorized the city "to acquire the same for such use by condemnation." The act required the proceeding to be instituted by the presentation of a petition to the Supreme Court, which should describe the property, name the owners and any parties having claims or liens thereupon and which should pray "that the said city may be authorized to take and hold said property and franchises forever, for the public use, * * * upon making just compensation therefor and that commissioners of appraisal be appointed to ascertain the just compensation to be made, etc." The act made provision respecting

the service of a notice of the presentation of the petition upon all parties, and for the making of an order by the court, when presented, authorizing the city " to take and hold said property and franchises forever for the public use, free of all liens, etc., upon making just compensation therefor ; " and it was also provided, further, that any parties having an interest in the property or franchises " shall have a right to be heard in person, or by attorney, upon the said application, and upon any subsequent application to the court and to be heard and to present his proof upon any hearing before the commissioners."

The proceedings before the commissioners were regulated and the court, upon an application to confirm their report, was empowered to set it aside for irregularity, or for error of law, or upon the ground that the award was excessive, or insufficient. It was further provided that, upon payment of the compensation, the city shall possess the property and franchises and " hold the same in fee for the public use ; " and authority was given for the issuance of city water bonds sufficient for the payment required. The city proceeded in conformity with this act and, upon the presentation of its petition, commissioners were appointed ; who held hearings and took proofs and reported that a just compensation for the condemned property would be the sum of $570,000. Their report apportioned the compensation, as follows : For the lands, the sum of $77,500 ; for the buildings, pipes, machinery, materials, etc., the sum of $292,500, and for the franchises and contract rights, " including the contract with the town of New Lots," the sum of $200,000. In this report, the commissioners defined the nature of the company's franchises and rights, and stated the principle upon which they had proceeded for their valuation. They refused to consider that the company had any exclusive right to publicly purvey water, or a right which could not be taken away by the legislature, and they, therefore, allowed materially less as compensation, than would have been allowed, if the company's rights were so exclusive as to preserve them from rivalry, or from legislation. They valued the franchise " upon these assumptions, viz.: (1) That at

present the water company alone has the right publicly to purvey water in the twenty-sixth ward; (2) that the exclusiveness now incident to its right may at any time be taken from it by the legislature, or by local authorities acting under legislation, but (3) that neither the legislature nor local authorities would, in determining whether to take from the company the exclusiveness of its right, fail to have such due regard as is demanded by ample and fair public policy, to the past investment, risks and services of the company and to the reasonably just expectations which those who invested money in its work had in mind when so investing."

*William C. De Witt* and *Benjamin F. Tracy* for appellant. The charter of the Long Island Water Supply Company is a contract between the state and the town of New Lots upon the one hand and the water company upon the other, by which, in consideration of the money invested and the acts done by the company, the company is granted the right and franchise to supply and furnish to the town of New Lots and the inhabitants thereof pure and wholesome water during the term of its corporate existence. (*Dartmouth College Case*, 4 Wheat. 627; *People* v. *Roper*, 35 N. Y. 633; *Dodge* v. *Woolsey*, 18 How. [U. S.] 331; *S. Bank* v. *Knoop*, 16 id. 369.) Irrespective of the point that the state is a party to the contract, the method of incorporation under the statute, to wit, the proposition of the persons about to organize a company, upon the one hand, and the acceptance thereof by the authorities of the town, on the other hand, and the mutual establishment of the corporation, constitutes a common-law contract between the town and the water company, protected, for its entire term and in all its obligations, by constitutional law. (*Milhau* v. *Sharp*, 27 N. Y. 611; *Mayor* v. *S. A. R. R. Co.*, 32 id. 272; *Detroit* v. *P. Co.*, 43 Mich. 140; *People* v. *O'Brien*, 111 N. Y. 1; *T. Bank* v. *Bond*, 1 Ohio St. 670, 679; *Bailey* v. *Mayor*, 3 Hill, 531; *Petersburgh* v. *Applegrath*, 26 Am. Rep. 357; 28 Gratt. 321; 2 Pars. on Cont. 514; *Mayor* v. *S. A. R. R. Co.*, 32 N. Y. 271; 34 Barb. 47,

53; *People* v. *O'Brien*, 111 N. Y. 9.) The exclusive right
of the water company to publicly furnish the municipality
and its inhabitants with water was expressly affirmed and
established by the act of the legislature annexing the town of
New Lots to the city of Brooklyn. (Laws of 1886, chap. 335,
§ 4, p. 804; *Ziegler* v. *Chapin*, 126 N. Y. 342.) The exclu-
sive character of the appellant's chartered right or franchise is
in no respect in contravention of constitutional law. (*New
Orleans* v. *Clark*, 90 U. S. 644.) The franchise of the appel-
lant is equally inviolable by legislative power if it be deemed
to have arisen from legislative grant instead of being founded on
contract. (*People* v. *O'Brien*, 111 N. Y. 1; *Detroit* v. *D.
& F. P. R. Co.*, 43 Mich. 140; *Ziegler* v. *Chapin*, 126 N.
Y. 342.) In appraising the property of the appellant the
commissioners proceeded upon an erroneous principle. They
accepted neither the market value of the property nor its act-
ual value as shown by its earning capacity as the basis of their
award, but proceeded to create a basis of their own which
rested upon mere assumption and conjecture, having no
foundation either in fact, in reason or in law. (*In re Furman
Street*, 17 Wend. 649; *In re William & Anthony Streets*, 19
Wend. 678, 696, 691; *T. & B. R. Co.* v. *Lee*, 13 Barb. 169;
*Barton* v. *McLean*, 5 Hill, 256; *Baldwin* v. *Humphrey*, 44
N. Y. 614.) The commissioners were bound to award an
amount sufficient to pay the actual market value of the stock
and bonds of the corporation, and their failure to do so is
fatal to their report. (*Henderson* v. *N. Y. C. R. R. Co.*, 71
N. Y. 423.) The commissioners erred in allotting the
$200,000 awarded for the franchise to the Mercantile Trust
Company in part liquidation of the bonds issued upon the two
mortgages of the corporation, instead of awarding it to the
company for the benefit of its creditors and stockholders.
(Cook on Stocks & Stockholders, § 689; *Carpenter* v. *B. H. G.
M. Co.*, 65 N. Y. 43; *Lord* v. *Y. G. F. Co.*, 99 id. 547; *F. O.
H.* v. *B. H. Assoc.*, 64 id. 561.) Whether the use for which
the property is to be condemned is public or private, is not a
question for the legislature, but for the court, and the legisla-

ture cannot make a use public by calling it so. (*In re Townsend,* 39 N. Y. 174; *W. W. M. Co.* v. *Shanahan,* 128 id. 345; *Bankhead* v. *Brown,* 25 Iowa, 540; *Tyler* v. *Beacher,* 44 Vt. 548.) The act, chapter 481, Laws of 1892, under which the appellant's property is sought to be taken, is unconstitutional and void because it designates no particular use for which the property is to be acquired, and, therefore, impresses the property with no trust in favor of the public, while at the same time it gives no opportunity for a judicial determination of the question of public or private use, and it requires condemnation of all appellant's property without reference to its character, and to the question whether it is capable or incapable of being applied to a public use. (*Embury* v. *Connor,* 3 N. Y. 511; *In re Cooper,* 28 Hun, 51; *People* v. *Smith,* 21 N. Y. 598; *In re Mayor, etc., of New York,* 135 id. 253; *In re N. Y., L. E. & W. R. R. Co.,* 99 id. 24; *P. W. W. Co.* v. *Bird,* 130 id. 258; *Burnett* v. *Mayor, etc.,* 12 Cal. 76.) The act of 1892 cannot be adjudged to be constitutional by reading into its provisions defining and limiting the use for which the condemnation of the appellant's property is authorized, and thus seeking to impose upon the property a trust not imposed by the statute. (*Bensley* v. *M. L. W. Co.,* 13 Cal. 306; *S. V. W. W. Co.* v. *S. M. W. W. Co.,* 64 id. 123.) The act, chapter 421 of the Laws of 1892, is unconstitutional, because it authorizes the condemnation of property which is already devoted to public use without designating any different or larger public use to which it is to be applied, and deprives the court of all judicial power to hear and determine whether the new use is a greater or different use from that to which the property is already devoted. (*W. R. B. Co.* v. *Dix,* 6 How. [U. S.] 535; *L. S. & M. S. R. Co.* v. *C. & W. I. R. R. Co.,* 97 Ill. 506.) The appellant had a right to introduce its scientific evidence in the affirmative and demonstrated form which the learned experts voluntarily adopted, and the commission had no right or power to compel these expert witnesses to adopt the weaker form of opinions founded upon assumption. (*Master* v. *Brooklyn,* 17 Hill, 61, 68, 69, 71, 72,

73; *Taylor* v. *Bradley*, 39 N. Y. 144; *Wakman* v. *W. M. Co.*, 101 id. 209, 210; *Reed* v. *R., W. & O. R. Co.*, 49 How. 23; *Joy* v. *Hopkins*, 1 Den. 84; *Hagar* v. *Edwards*, 4 Barb. 256; *Sickles* v. *Gould*, 51 How. Pr. 22; *Hawkins* v. *City of Fall River*, 119 Mass. 94; *Dickinson* v. *Inhab. of Fitchburg*, 13 Gray, 555; *I. & W. R. Co.* v. *Von Hom*, 18 Ill. 258; *Butler* v. *Herring*, 15 id. 488.) The appellant had a right to show the value of these works to the city of Brooklyn, as an ingredient of proof of their general value. (*Sturgis* v. *Knapp*, 33 Vt. 531.)

*Thomas E. Pearsall* for appellant. The decision setting aside the report of the majority of the commission should be upheld by this court, and the order of the General Term reversed. (*S. Ins. Co.* v. *Village of Keeseville*, 50 Alb. L. J. 9; *In re T. F. S. R. R. Co.*, 120 N. Y. 343.) It was error to admit the affidavit of the respondent's president to the tax assessors. (*Kenerson* v. *Henry*, 101 Mass. 152; *Hanna* v. *Sanford*, 20 Wkly. Dig. 288; *Heller* v. *Paine*, 34 Hun, 167; *Lawrence* v. *M. E. R. Co.*, 24 Abb. [N. C.] 70; *Roes* v. *M. R. Co.*, 39 N. Y. S. R. 517; *Anderson* v. *McAleenan*, 29 id. 406.)

*Albert G. McDonald* and *George G. Reynolds* for respondent. If it shall appear that the commissioners have not adopted any erroneous rule of law in the valuation of the franchise of the company, this court will not disturb their findings upon any question of fact. (Lewis on Em. Dom. §§ 135, 136, 137, 138, 274, 275; *C. R. Bridge* v. *W. Bridge*, 11 Pet. 420; *Stein* v. *B. W. S. Co.*, 141 U. S. 67; *A. P. R. Co.* v. *Douglass*, 5 Seld. 414; *C. B. Co.* v. *B. B. Co.*, 27 N. Y. 87; *F. P. B. Co.* v. *Smith*, 30 id. 44; *S. W. Co.* v. *Syracuse*, 116 id. 167, 179.) The appellant at the General Term, for the first time, claimed that the Annexation Act of 1886 (Chap. 335, Laws 1886) affirmed and established the exclusive right of the water company to furnish the former town with water. It will plainly appear that it does no such thing.

Nothing in that act forms any part of the charter or franchises of the company. (*Ziegler* v. *Chapin*, 126 N. Y. 331; *In re R. W. Commissioners*, 66 id. 418; *Bloomer* v. *Stolley*, 5 McL. 158.) Reports of commissioners of appraisal in eminent domain proceedings are not disturbed except for plain error in method or principle of treatment. (*In re Thompson*, 127 N. Y. 472; *R., etc., R. R. Co.* v. *Myers*, 43 N. Y. S. R. 734; *In re S. C., etc., R. Co.*, 43 id. 66; *In re Newton*, 45 N. Y. 18.) The point was made below that the commissioners have not awarded an amount sufficient to pay the actual market value of the stock and bonds of the corporation. There is no evidence in the case to show such value. (*Reed* v. *McConnell*, 101 N. Y. 270; *Wakeman* v. *N. & W. Mfg. Co.*, Id. 205.)

GRAY, J. Upon the facts, as they have been stated, the legal propositions, which seem to have been urged by the water company and which were passed upon in the court below, in their consideration of the report, as we perceive from the record and the opinions, were, in substance, that the company gained, by incorporation and by its contract with the town of New Lots, certain rights to purvey water to the town, which were exclusive and permanent, during the term of the corporate charter, and that the commissioners' award of compensation should have been based upon a recognition of the inviolable nature of the franchise and the rights of the company. Upon this appeal, a further point is raised as to the constitutionality of the act of 1892; which authorized the city to take the appellant's property. The argument of the appeal has been made with great ability; the propositions contended for have been pressed with much earnestness and the main question is of high importance; for it concerns the guaranty given to the citizen that he shall be protected in the enjoyment of his property and that it shall not be taken from him, unnecessarily and without a just compensation being made. We have, therefore, given to the question the serious consideration, which it demands.

Upon this appeal the question of the amount of the award is not one we can, or should, review. The act provides for the appointment of five commissioners, "to ascertain the just compensation to be made for the taking," (sec. 5); and, upon the application to confirm their report, the Supreme Court is authorized to confirm it, or it may set it aside for irregularity, or for error of law in procedure, or upon the ground that the award is excessive, or is insufficient. (Sec. 10.) An appeal is then permitted to the petitioner, owner, or any aggrieved person, to the General Term of the second department and "when the report is confirmed, the court shall enter a final order, which shall be binding upon all persons, etc., directing that compensation be made pursuant to the determination of the commissioners, etc." Notwithstanding a further appeal is authorized to be taken to this court (Chap. 669, Laws 1893), we are confined to the questions of law, which have arisen. We may concede that the evidence would well have justified a larger award, even upon the theory upon which the commissioners proceeded; but having found upon evidence, and their report having been confirmed by the court below, we are concluded as to the amount; if, in arriving at it, they have been guided by no erroneous rule of law. The first and prominent question, which we are called upon to consider, then, is the objection that the commissioners have erred in the legal principles, which they adopted for their guidance in valuing the property to be condemned. The objection does not so much relate to the valuation of the material property, in the lands, buildings and plant of the water company, as to the value affixed to the franchise. The commissioners refused to consider the company's franchise as exclusive in its nature, and beyond the power of the legislature, or of the local authorities acting under legislation, to affect through a similar grant to another company and the consequent rivalry. For the company, the argument may be stated to be that its charter was a contract with the state and the town of New Lots, granting to it the right and franchise to supply pure and wholesome water to the town, during the

term of its corporate existence, and that, irrespective of the question of whether the state so became a party to a contract, the dealings and proceedings with the town constituted a common-law contract; and that this contract, however it may be regarded as originating, is protected against any impairment of its obligations by the Constitution of the United States. It is, also, insisted that the contract was with the town as a proprietor and that it conferred the proprietary right to furnish water, which could not be divided, or impaired, during its term. Assuming the correctness of the definition of the capacity in which the town acted, the difficulty with the argument will be to allow its conclusion; whether that be to make the franchise an exclusive one; or to regard the grant by the town as one which makes it part with the whole proprietary right of purveying water within its limits.

Let us look at the statute, under which the water company was incorporated, and the dealings had between the appellant and the town. The act of 1873, and the amendatory acts which had been passed up to 1881, when the appellant's incorporation took place, constituted a general law of the state, under which any persons might form themselves into water works companies in towns, or villages. As a preliminary step they were, however, required to secure the assent of the particular town, or village, which it was proposed to supply with water, to an application for that purpose. That being secured, the promoters could file their certificate and become a corporate body, with all the extraordinary privileges, rights and immunities, which incorporation confers upon individuals. It is to be observed, with respect to the statute, that, while it permits of incorporation for the business purpose of supplying water, it aims mainly at the protection of the community and makes it a condition that the promoters shall set forth, not only the general facts relating to the proposed company, but, also, the intended sources of the water supply. The merit of this salutary provision is obvious. There is nothing in the statute, which, either in terms, or by apparent implication, grants to the corporation formed under it an exclusive right

to supply the town or village with water; or which precludes other persons, if they can secure an assent from the authorities to their application, from forming another company to supply water from other sources to the inhabitants of the same town, or village. The statute is general in its operation and in the grant of franchises, subject to the condition mentioned. It simply confers authority and power upon the corporation, when formed, to supply the authorities and the inhabitants of the place with water, at rates to be agreed upon. In its bearing upon the rights of the water company, I think the most to be said is, that it confers a franchise and sanctions the agreement with the municipality. Whether the charter from the state, or the agreement with the town, be regarded as the contract, in either case, it is certainly entitled to protection against legislation, which would destroy the franchise, or which would, by some alteration of the charter, impair obligations. The company is entitled to have the clause of the Federal Constitution liberally construed, so as to secure to its franchise every immunity in such respects. It must be remembered that the question here does not turn upon the consideration of any possible destruction of the franchise by the act of the town; but upon the consideration of whether the company enjoyed freedom from competition and the impairment of the value of the franchise by the grant to others of a similar franchise. The commissioners, in awarding compensation for its franchise, separately and as distinct from the cost or value of lands and construction, have ruled that it had no such immunity and the objection goes to the principle of the appraisal. The claim of the appellant is that the commissioners should have appraised the value to it of the franchise, as though it were inviolable; not only by direct action, but by such an impairment as would be caused through granting to others a like franchise to supply water. Of course, it is plain that a franchise of the nature claimed might be of immense value, relatively to the cost, or to the moneys actually put into the enterprise by the promoters,

and that, in this case, if such were the franchise its value should have been stated at far higher figures.

The *Dartmouth College* case (4 Wheat. 518), while establishing the doctrine that a charter is a contract, cannot help out the general claim of the appellant here. In that case, the legislature attempted to alter the charter of the institution in essential respects; which concerned the number and mode of appointment of the trustees and the creation of a board of overseers, with power of control over the trustees. The charter was held to be a contract with the crown, to the obligations of which the state of New Hampshire had succeeded, and the legislation was held to be a violation of the clause in the Federal Constitution, forbidding a state from passing any law impairing the obligation of contracts. The principle enunciated has been steadily adhered to, despite criticisms, and is not questioned here; but to say that the legislature of a state, in the absence of a reserved right, cannot pass a law which repeals, or which alters, the charter of a corporation by the annexation of some new terms or conditions, does not require us to say, further, as a necessary, or logical, corollary to the proposition, that a state may not grant a franchise of a similar nature to others, which, in its exercise, may impair the value of the former grant; provided that by the terms of the former grant the state had not concluded itself from so doing. The distinction in principle is material between legislative action which impairs directly the obligations of the contract by alteration, or otherwise, and legislative action which, because authorizing a competitive or a rival scheme, may impair the value to its incorporators of the former corporate project. Any other view would tend to support a right to interfere with, or to control, the power of the state, through its legislature, to exercise its discretion in grants of franchises. We think it is clear upon authority that the statute, under which the appellant was incorporated, being couched in general terms, a charter, secured by compliance with its terms, does not grant to the company an exclusive privilege or franchise to supply water to the town, or village;

nor preclude the grant of another charter for a similar franchise. The grantee of the charter takes nothing by implication and the state is not further bound, nor restricted, than can be read in the act. This is in accord with principle and with the authorities. It was said in the case of *Proprietors of the Stourbridge Canal* v. *Wheeley* (2 Barn. & Ad. 793), with respect to the plaintiff's rights, that they were derived from the act of Parliament which authorized the canal, and they could "claim nothing that is not clearly given them by the act." Chancellor Kent argued for the view that such grants or franchises might be so extended by implication as to give them due effect, "by excluding all contiguous competition which could be injurious" through the creation of a rival franchise, or otherwise. (3 Kent's Com. 459.) He had reasoned for it in previous decisions. (*Ogden* v. *Gibbons*, 4 Johns. Ch. *150, *160; *Newburgh, etc., Turnpike Co.* v. *Miller*, 5 id. 101.) But this doctrine did not prevail. It was distinctly overruled in *The Charles River Bridge* case (11 Peters, 548); the doctrine of which latter case this court has repeatedly followed in its decisions; notably in the cases of *Auburn, etc., Plank Road Co.* v. *Douglass* (9 N. Y. 444); *Chenango Bridge Co.* v. *Binghamton Bridge Co.* (27 id. 87); *Power* v. *Village of Athens* (99 id. 592); and *Syracuse Water Co.* v. *Syracuse* (116 id. 167). The same doctrine was reiterated by the United States Supreme Court, as late as in *Stein* v. *Bienville Water Co.* (141 U. S. 67).

In the case of *The Charles River Bridge* v. *Warren Bridge* (11 Peters, 548) it appeared that the legislature of Massachusetts had passed an act incorporating the plaintiff for a term of years, with power to erect a bridge and to collect tolls, etc.; and that, subsequently, it incorporated the defendant, with power to erect another bridge, practically alongside of the plaintiff's bridge, and which, after the expenses of its construction had been reimbursed, should be surrendered to the state. The plaintiff charged that the act incorporating the defendant impaired the obligation of the contract between the state and the plaintiff, and was, therefore, repugnant to

the Constitution of the United States. It was claimed, in its behalf, that it had acquired an exclusive right in that line of travel, and that the prior legislative acts necessarily implied that the legislature would not authorize another and a free bridge by the side of the plaintiff's; thus rendering its bridge of no value. The case presented the question in a different form to the court, which the *Dartmouth College* case did not cover; inasmuch as there had been no alteration of the charter of the corporation. The opinion of Chief Justice TANEY elaborately discusses the question whether there was such a contract on the part of the state, as implied the agreement on its part not to authorize another bridge; which, from being free and contiguous, rendered the plaintiff's franchise of no value. It was held that such an agreement could not be implied, by reason of the settled rule of construction that in charters no rights are taken from the public, or given to the corporation, beyond those which the words of the charter, by their natural and proper construction, purport to convey. As there were no words which imported such a contract, none could be implied. Mr. Justice STORY dissented from the conclusions reached by the court, in a learned and vigorous opinion; in which he contended, upon the authority of " the old law," for such a liberal construction of legislative grants, as would secure by implication to the grantee the enjoyment of what is granted, and insisted that the grant to the plaintiff carried with it an exclusive franchise to such a reasonable distance upon the river, as that travel would not be diverted by any new bridge. He cited the decision in the *Dartmouth College* case as apposite in its application to the case before him; but the argument of that great jurist upon the law and upon the injustice of the other view was without avail to convince a majority of his associates that the legislative grant should be extended by implication. The cases of *Stein* v. *Bienville Water Supply Company* (141 U. S. 67) and of *Syracuse Water Co.* v. *City of Syracuse* (116 N. Y. 167) are recent expositions of the doctrine, which requires a strict construction of public grants of franchises and denies to the

grantee anything by implication. Without pursuing further the discussion of the nature of the appellant's franchise, under its charter, it is our judgment that viewed as a contract, to which the state was a party, there was no grant of a right to supply water to the town, which was exclusive in its nature; or which entitled it to such immunity as would preclude another, or other incorporations for a similar object. The conclusion follows both from the nature of the general act and from the absence of proper words precluding a grant of a similar charter to other applicants.

We, then, come to the consideration of the proceedings had with the town of New Lots and the contract made subsequently to appellant's incorporation. The proposition is that the method of incorporation under the statute resulted in a common-law contract between the company and the town, protected for its entire term by constitutional law; by which all the public and proprietary right to furnish the authorities and inhabitants with water was conferred; and in the undivided and unimpaired exercise of which, during the term of the contract, the company must remain. So far as the proposition involves the construction of the statute, we need not repeat what we have said; and we need only consider what was the obligation assumed by the town of New Lots, by virtue of the part taken by it in the proceedings for incorporation. A design of the statute, as before suggested, in prescribing an application by the promoters to the town or village authorities, was to furnish some protection to the community, with respect to the establishment of water works companies. It not only is interested in knowing the facts about the proposed corporation, which is to become empowered to construct water works and to lay pipes in the public streets and places; but it is vitally concerned in knowing the sources from which it is proposed to distribute water to the inhabitants. The provision for its consent to the application, as a precautionary and politic measure, in the interests of the health of the community, is of undeniable wisdom. But how and why shall we infer that the requirements of the statute, to the effect that

the promoters of the water company shall make a detailed application, and that the application shall be granted by the authorities, to be followed up by incorporation by certificate, result in constituting a contract between the parties, which obligates the town authorities not thereafter to contract with other parties for another supply of water; which, for some adequate reason in the circumstances, might be required? On its face, the proposition seems to repel. We may concede that the proceedings result in a contract, binding the parties to the observance of all its propositions and entitled to the protection enjoyed by ordinary contracts between individuals; but we cannot spell out from such a contract, and we are unable to infer from it, regarded in the light of the proceedings in which it was made, an agreement that no like contract should ever be made with other persons, or incorporations. Such an agreement would not be within the delegation of any express powers to the municipality; nor would it be warranted by the letter or the spirit of the proceedings; and the dictates of a sound public policy would forbid its inference. Public policy would discountenance such an agreement, as militating against the public interests and as discounting, unwarrantably, the public needs and emergencies of the community in the future. The dealings with the town authorities amounted to a proposition to form a company for the purpose of supplying water to the inhabitants from certain sources; upon which the authorities acted by voting in acceptance thereof. Under the statute, that warranted the formation of a company and authorized it to proceed with its works and the laying of pipes in the streets. The subsequent formal contract regulated the relations of the contracting parties; fixed the number of miles which the company should pipe; limited the prices to be charged and in other ways arranged for the working of the contract; but we look in vain for an agreement binding the town authorities not to make a like grant or contract to, or with others, if the public needs demand it. The contract is silent on all subjects, except what the company may, or must do. The moral view of the injustice of another similar contract, during the

life of the existing contract, pre-supposes political and social conditions rendering a further contract unnecessary. The contract with the appellant was exclusive, only in the sense that no similar one could be made which could infringe its particular property rights, but it did not prevent the town from contracting for a further, or other supply of water. Competition might impair the value of the first contract; but it could not be said that thereby there would be an invasion of the appellant's franchise, within the constitutional meaning. In our judgment, there was nothing in the contract relations with the town, which insured the company against a possible competition or rivalry in the future by another company, which should be authorized by the town authorities to be formed to purvey water. The cases of *Stein* v. *Bienville Water Supply Co.* (141 U. S. 67) and of *Syracuse Water Co.* v. *City of Syracuse* (116 N. Y. 167) cannot be slighted as authorities. The complainant, in the latter case, held its franchise under express legislative grant; but that fact cannot affect the application of the decision. The contract here was under legislative sanction and the acceptance of its proposition and the agreement by the town cannot be construed any more strongly in favor of the company, than if the franchise rested solely upon the legislative grant. In the first of the two cases mentioned, the city of Mobile had granted the sole privilege of supplying water from a certain source for a term of years and the agreement was confirmed, subsequently, by an act of the legislature of the state. The defendant was incorporated, afterwards, by an act of the legislature, for the purpose of supplying the city with water from a different source than the one which had been previously designated; and it was held that the previous contract was not impaired, within the constitutional meaning. It was said that, under the rule in the construction of grants by the public, as settled by authority, it could not be held that "a grant, under legislative authority, of an exclusive privilege, for a term of years, of supplying a municipal corporation and its people with water, drawn by means of a system of water works from a particular stream or river, prevents the state

from granting to other persons the privilege of supplying, during the same period, the same corporation and people with water drawn in a like manner from a different stream or river." In the *Syracuse Water Company's* case, it appeared that that company had been incorporated for the purpose of supplying water to the city of Syracuse and its inhabitants and that that was the only means for such supply possessed by the city. It was claimed that its franchise conferred an exclusive right, which would be invaded if the Central City Water Works Company, with which the city of Syracuse had contracted to furnish the city with water, was permitted to exercise the privilege granted by the contract. The latter company was incorporated under the general act and this court, in its Second Division, held that "the obligation of the contract between the state and the plaintiff, represented by the franchise granted to the latter, was not impaired by the exercise by the defendant company of the privileges granted to it, in the performance of the proposed contract." Judge BRADLEY, who delivered the opinion of the court, reviewed the question of the plaintiff's rights in the light of adjudged cases and held that the grantee in public grants takes nothing, in respect of the exercise of his franchise, by inference. "Except," he said, "so far as they are by the terms of the grant made exclusive, the power is reserved to grant and permit the exercise of competing and rival powers and privileges; however injurious they may be to those taken by the prior grantee."

The question, which engages our attention, is of great interest and the discussion could be easily prolonged upon the legal principles involved and upon the authorities; but it would not be profitable to continue a discussion, the grounds of which have been gone over, in the one aspect or the other, in the decisions to which reference has been made, as well as in others referred to by counsel; even if the time were at our disposal. The authorities cited by the appellant's counsel, in support of his position as to the inviolability of the company's franchise, have not been overlooked. *Milhau* v. *Sharp*

(27 N. Y. 611); *Mayor, etc.*, v. *Second Ave. R. R. Co.* (32 id. 272), and *People* v. *O'Brien* (111 id. 1) decided that the franchise acquired by a corporation by contract with the municipality was irrepealable and indestructible at the latter's hands, whether through the action of its officers, or by legislation.   We do not assert to the contrary, now, and those cases do not controvert our present views.   In none is it held that the constitutional prohibition against the impairment of contracts by legislation reaches beyond their protection from alteration or repeal, without their consent, and prevents the granting to others of similar franchises, which may impair the value of the prior grant.   The legislature may not destroy, or confiscate, the property and franchise of a corporation; but it is not conceivable that the sovereign power can be restricted in its grants of corporate franchises, within constitutional limits, save by its own. express agreement; even though the material consequences may be such as to entail loss, if not ruin, upon existing corporations, through rivalry and competition.   Those are risks which, if they cannot be guarded against, are assumed by the grantees.   The franchise of the appellant is founded upon the contract which the statute authorized with the town of New Lots.   It cannot be taken away, except upon making just compensation; but in estimating its value, in condemnation proceedings, it is not to be regarded as exclusive in its nature.   And it is in our view immaterial to the consideration of the question of the value of the franchise, whether it was founded upon the contract with the municipality, or in legislative grant.   In either case, as no exclusive franchise was granted in terms, none could be inferred.

The appellant further urges that by force of the provisions of the Annexation Act of 1886 (Chap. 335, Laws of 1886), its exclusive right to furnish water was affirmed and established.   To this view of the act we cannot assent.   That act was not intended to and did not operate upon the charter of the appellant.   It bore upon the powers of the city of Brooklyn, upon annexation with the new territory, and its purpose was to conditionally protect the company's franchise in that

event.  We have defined its effect in the *Ziegler* case (126 N. Y. 342); when Judge FINCH, speaking for the court, said : " The plan formulated by the Annexation Act thus accomplished two things; it protected the city, if it chose to purchase, by giving it the power to condemn the company's franchise as well as its tangible property, which, under the previous acts, it could not have done (*Matter of Rochester Water Commissioners*, 66 N. Y. 418); and if the city chose not to buy, the act protected the company by excluding during its charter life the municipal competition."  It was, at the most, a protective measure ; induced by a regard of the possible consequences to the water company, if the municipality of Brooklyn should be disposed to take advantage of the situation upon annexation.  It did not grant, and appellant's counsel do not claim that it granted, any franchise to the company ; nor did it enlarge the one possessed.  It was simply incidental, as the same counsel say, to the terms and conditions attached to the plan of annexation.  But, if the act did not affect the franchise, its provisions were incompetent to make it more extensive and if it constituted no agreement with the company, which is not and cannot be pretended, then it was not beyond the power of the legislature, subsequently, to repeal the provision and to leave the city free to compete.

In the next place, we will briefly consider the proposition that the Condemnation Act of 1892, which authorized this proceeding, is unconstitutional and void.  The important point, in the argument upon this proposition, is that the principle which forbids the taking of a citizen's property, except for a necessary public use, requires, for the validity of the legislative act, that the particular public use be designated ; whereby the property becomes impressed with a trust for the benefit of the public, and that not only this act is defective in that respect, but it gave no opportunity for a judicial determination of the question of the use.  In our judgment, however, while it may have been better legislation to have fixed and limited the particular use, for which the city of Brooklyn was authorized to acquire and hold the appellant's property,

the act is valid.    Throughout, it declares the acquisition to be
in the public interest and for the public use.    Its scheme sug-
gests that the legislature deemed the matter of the water sup-
ply of too great public importance to be left to private enter-
prise and that it should become a part of the great municipal
system.    The legislature must be presumed to be the best
judge of the necessity of public works and improvements; of
how they shall be instituted and of how they should be car-
ried on so as best to subserve public ends.    Of the necessity
for the exercise of the right of eminent domain, the legisla-
ture is the judge; but whether the use, for which the prop-
erty is to be taken, is a public use, which justifies its appro-
priation, is a judicial question; upon which the courts are
free to decide.    The opportunity for the presentation of that
question and for obtaining a judicial determination upon it
was distinctly provided for in this act.    The act, in the first
section, declared that the " public interest requires the acqui-
sition by the city of Brooklyn, for the public use," of the
properties of the water company and, in the next section, it
provided for the presentation of a petition by the city at a
Special Term of the Supreme Court; which, after setting
forth a description of the properties and franchises and the
names of the owners, or of parties having claims, or interests
therein, should pray " that the said city may be authorized to
take and hold said property and franchises forever, for the
public use, free of all liens and incumbrances, upon making
just compensation therefor, etc."    Service of notice of the pre-
sentation of this petition was then next provided for and, in
the fifth section, after directing the court, upon the petition
being presented, to make an order authorizing the city to take
and hold the property for the public use, it is further pro-
vided that " any person or corporation having, or claiming any
interest whatever in the said property and franchises, shall
have a right to be heard in person, or by attorney, upon the
said application, etc."    The application referred to plainly
means that of the city, upon the presentation of the petition.
It can mean nothing else; for that is the only application in

question.  There was thus afforded the opportunity to raise any objections affecting the right of the city to proceed under the act in the condemnation of the appellant's property and to have them judicially heard and determined.

The appellant's other point as to the unconstitutionality of the act is, that it authorized the condemnation of property, which is already devoted to a public use, without designating any different or larger public use to which it is to be applied. We do not think that there is force in this objection.  While the purpose of the water works company was public in its nature, it cannot be said to be strictly identical with the municipal purpose.  A municipal corporation is a public and governmental agency.  It holds property for the general benefit, with a larger scope of use.  When acquired by the municipality of the city of Brooklyn, the appellant's property would become a part of a general system, under a single management and conducted essentially as a public work.  If in order the better to subserve the public use the appropriation of private property is necessary, even though it be already devoted to a similar use, the right to make it is incident to the legislative power and it is necessary for the general good that the right be conceded.  All property within the state is subject to the right of the legislature to appropriate it for a necessary and reasonable public use, upon just compensation being provided to be made therefor, and there can be no distinction in favor of corporations whose franchises and operations impart to them a *quasi* public character.  We think it very apparent that the public use, to which the appellant's property is to be devoted by the provisions of the act, does differ and that it is of a higher and wider scope.

None of the other questions, we think, call for a further expression of opinion and our judgment is that the decision of the General Term was correct and that its order should be affirmed, with costs.

All concur.

Judgment affirmed.