In re BEAUTY SPRING WATER CO.

TALCOTT, Village President, v. BEAUTY SPRING WATER CO.

(Supreme Court, Appellate Division, Fourth Department. July 6, 1909.)

1. WATERS AND WATER COURSES (§ 188*)—WATERWORKS COMPANY—FRANCHISE.

The incorporation as a village of territory, including parts of two other towns, to the inhabitants of one of which a waterworks company was authorized to supply water, did not extend the company's right to supply the entire village.

[Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. § 188.*]

2. MUNICIPAL CORPORATIONS (§§ 966, 978*)—LIABILITY TO TAXATION—WATER COMPANY—TAX TO SUPPORT MUNICIPAL WATERWORKS.

A village applied to the State Water Supply Commission for approval of plans for municipal waterworks, stating therein that the village would purchase at a fair price the existing waterworks system of defendant company. The application was granted, but the proposition to purchase defendant's plant was lost on submission to the voters. The supply furnished by defendant company had been inadequate for fire and household purposes, and had entirely failed in parts of the village. A part of the village tax was levied to maintain the municipal water system, and defendant objected to the levy of any part thereof against its property in the village, claiming that such tax would discriminate in favor of the municipal water plant. Held that, as the village had jurisdiction of defendant's property, the tax was not void, and defendant could not resist payment thereof on a motion to vacate an order in aid of the collection of the tax; its remedy being by a direct action, if it had any legal grievance because of the construction of the municipal waterworks without purchasing its plant.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. §§ 966, 978.*]

McLennan, P. J., and Williams, J., dissenting.

Appeal from Lewis County Court.

In the matter of supplementary proceedings for the collection of a tax by Frank H. Talcott, as president of the village of Lyons Falls, against the Beauty Spring Water Company. From an order vacating an order for the examination of defendant's officers, plaintiff appeals. Order reversed, and motion to vacate denied.

The following is the opinion of Emerson, J., in the court below:

On August 28, 1908, the county judge of Lewis county granted an order for the examination of the officers of Beauty Spring Water Company, pursuant to section 259 of the tax law (Laws 1896, p. 885, c. 908), for the payment of a municipal tax levied by the authorities of the village of Lyons Falls. The company thereupon made a motion to set said order aside, and at the request of the county judge of Lewis county, made pursuant to law, I held a term of court in said county for the purpose of hearing and determining said motion. The papers produced on said motion show that the Beauty Spring Water Company is a waterworks corporation duly incorporated under the general act for that purpose on or about June 23, 1896.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The articles of incorporation stated that the object was to supply water to the inhabitants of the town of West Turin. The company procured the necessary permit from the town board of that town, and proceeded to install a plant for the above purpose.

While the object of the corporation, as stated in the certificate of incorporation, was to furnish water to the inhabitants of the town of West Turin, the company seems to have extended its system of water service so as to supply at least a portion of the inhabitants of the adjoining town of Lyonsdale. The village of Lyons Falls was incorporated in the year 1899 under the general village law, and also under an enabling act passed in 1900 (Laws 1900, p. 1533, c. 700), and was made up of territory in both said towns of West Turin and Lyonsdale, being the same territory that was supplied with water by said Beauty Spring Company. Subsequent to said incorporation said company continued to supply the inhabitants with water; no discrimination apparently being made between the sections of said village which were in different townships. After the organization of the State Water Supply Commission, and in the month of December, 1905, the village authorities of Lyons Falls made an application to said commission for the approval of plans, maps, and profiles for a proposed municipal waterworks system, accompanying which was a statement that they were willing to acquire by purchase or condemnation proceedings the property of said Beauty Spring Water Company, and to incorporate the same in the proposed municipal system, and that negotiations for that purpose were then pending. The commission thereafter determined that a municipal waterworks system was justified by public necessity, and that the plans proposed were just and equitable, and made fair and equitable provision for the determination and payment of any and all damages to persons and property, both direct and indirect, which would result from the execution of such plans, and said commission accordingly gave its approval to the same. The village authorities thereupon proceeded to install a municipal waterworks system. They however, did not acquire the property of the Beauty Spring Water Company either by purchase or condemnation, and seem to have taken no steps whatever to that end, except to submit a proposition to the electors of said village in the month of May, 1906, to purchase said plant at a price not exceeding $9,000, which was voted down by said electors. The village tax of Lyons Falls in 1908 amounted to $4,141.15, included in which was an item of $1,900 for the support and maintenance of the municipal water supply system, and the portion of said tax assessed and levied against said Beauty Spring Water Company was the sum of $37.79. The amount of tax so assessed and levied against the company, excluding the item for the support of the waterworks system, was the sum of $20.13, leaving the sum of $17.66, which was assessed against the company for the maintenance of said municipal system. Said Beauty Spring Water Company, claiming that it had been illegally assessed for the support of its competitor, the municipal plant, offered to pay the said sum of $20.13, but refused to pay the balance of the same, and these proceedings were thereupon instituted for the collection of the same.

It seems to me entirely clear that the property of the Beauty Spring Water Company was not lawfully taxable for the support of the municipal system. So far as the town of West Turin is concerned, the company possessed a franchise duly and regularly granted, and, while it had no franchise in the town of Lyonsdale, it had been permitted to install its system in that town, and the same were recognized as a lawful and existing waterworks system which the village authorities had agreed to ·acquire by purchase or condemnation proceedings. It is true that the franchise thus obtained was not exclusive, but in permitting the construction of municipal waterworks it is the policy of the law to prevent the ruthless destruction of capital already invested in a similar undertaking. To this end no municipal plant can be installed without the consent and approval of the State Water Supply Commission, which is only to be granted when the proposed plans provide adequate compensation for all damages, direct and indirect, which will result from the construction of the system. The plans submitted in this case provided for the acquisition of the property of the old company by purchase or condemnation proceedings, and this was held by the commission to furnish that adequate compensation which the stat-

ute requires. Instead of doing what the village authorities promised the State Water Commission they would do, and which was a necessary condition to obtaining the required consent, they did absolutely nothing, saving to submit a proposition to the electors in May, 1906, which seems to have been voted down by a decisive majority. Over two years had thereafter elapsed before the tax in question was imposed, and no further proceedings have been taken by said village to acquire the company's plant, either by voluntary sale or condemnation proceedings. Under these circumstances it seems to me that the village authorities of Lyons Falls have been guilty of gross negligence or absolute want of good faith. Being unable to agree upon the terms of purchase, it was their duty to institute condemnation proceedings for that purpose in conformity with the proposition they made to the Water Supply Commission. Having failed and neglected to do so, it would be the height of injustice to permit them to impose a tax on the Beauty Spring Company for the support of a competing system, which will doubtless drive the former out of existence. I think the illegality of this particular tax levy comes well within the Skaneateles Case decided by the Court of Appeals some years ago. Skaneateles Waterworks Co. v. Village of Skaneateles, 161 N. Y. 154, 55 N. E. 562, 46 L. R. A. 687.

It is, however, urged that the village authorities had jurisdiction to levy the assessments, and therefore the same cannot be attacked collaterally; the remedy of the company being a review by certiorari. The difficulty in this case, however, is not with the assessment, but is with the extension of the taxes by including in the same, as against this company, an item which was not a lawful charge against it. It is doubtful whether the company could have obtained any relief in this regard by certiorari or in any other manner except by a bill in equity. Mercantile National Bank v. Mayor, 172 N. Y. 35, 41, 42, 64 N. E. 756; Village Law, §§ 109, 110 (Laws 1897, p. 404, c. 414); Strusburgh v. Mayor, 87 N. Y. 452. But however this may be, the Skaneateles Case is authority for the proposition that the imposition of this tax was under the circumstances a violation of the contract rights of the company. This being so, the village authorities had no jurisdiction to levy the tax, and the validity of the same may be inquired into collaterally. Ross v. Supervisors of Cayuga, 38 Hun, 20; Dale v. City of New York, 71 App. Div. 228, 75 N. Y. Supp. 576, 1123; Matter of City of Rochester v. Bloss, 77 App. Div. 29, 79 N. Y. Supp. 236; Ætna Ins. Co. v. Mayor, 153 N. Y. 331, 47 N. E. 593. It would indeed be a sad commentary upon our judicial system if, under the circumstances of this case, the court was bound to lend its aid in the collection of this tax. I do not so understand the law, and therefore direct that the order in question be set aside and vacated.

Counsel for the Beauty Spring Water Company will serve a copy of this opinion with the order setting aside said proceedings. Costs of motion are allowed said Beauty Spring Water Company.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Harry W. Cox, for appellant.
C. S. Mereness, for respondent.

KRUSE, J. The respondent, the Beauty Spring Water Company, a domestic corporation organized to supply water to the inhabitants of the town of West Turin, a part of which town forms the village of Lyons Falls, resists the payment of $17.66 of the tax levied against it by the village in 1908, upon the ground that it is for the maintenance of a municipal water system in the village in competition with the respondent water company, which is now supplying water in said village.

That the respondent is taxable in the village is not questioned; neither is it claimed that any of the proceedings relating to the assessment and levying of the tax are invalid, save in one respect. The pre-

cise point is this: The entire tax levy of the village of Lyons for 1908 is $4,141.15. Of that amount $1,900 is for maintenance of the municipal water system, and the respondent contends that no part of the $1,900 should be levied against it. The total tax levy against the water company is $37.79. It offered to pay $20.13, but refused to pay the remaining $17.66 for the reason stated. Thereupon the president of the village, pursuant to section 259 of the tax law (Laws 1896, p. 885, c. 908), made application to the County Court of Lewis county for an order, upon a proper affidavit, to examine the tax debtor, the respondent water company, which was granted. Thereafter, upon motion of the water company, said order was vacated and set aside upon the ground, as appears by the opinion of the county judge, that the tax was a violation of the contract rights of the company, and was illegal. The appeal is from the order vacating and setting aside the order to examine the water company.

The village of Lyons Falls was incorporated in 1899, under the general village law (chapter 414, page 366 of the Laws of 1897); its incorporation proceedings being confirmed by chapter 700, p. 1533, Laws 1900. Territorially it includes parts of the towns of West Turin and Lyonsdale. The water company was organized about three years before the incorporation of the village. By the terms of its certificate of incorporation, its object is to supply water to the inhabitants of the town of West Turin, in the county of Lewis, in this state. Its capital stock was stated to be $3,000, and its corporate existence 50 years. The certificate of incorporation was filed in the county clerk's office of Lewis county June 23, 1896, together with the certificate of a majority of the town board of the town of West Turin, granting the application to organize a waterworks company to supply water to the inhabitants of the village of Lyons Falls and of the town of West Turin. Presumably the persons making the application were the incorporators of the water company. Since its incorporation the water company has furnished water to a large part of the residents and property owners of the village, and to some customers outside; so it is stated in the affidavit of the president of the water company.

It is claimed on the part of the village that the water company has no legal right or privilege to furnish any water in that part of the village of Lyons Falls situate in the town of Lyonsdale, and, according to the affidavit of the president of the village, the water company's system is inadequate, does not furnish sufficient fire protection, has only five hydrants in all in the various parts of the village, which afford practically no fire protection, and prior to the installation of the village waterworks the water supply furnished by the water company was often inadequate for domestic purposes, and sometimes there would be no flow of water at all on the higher ground in the village, and since the village waterworks system has been installed the village has increased in size. The municipal waterworks of the village have been in operation since about November, 1906. Before installing the system, application was made to the State Water Supply Commission by the village authorities for ap-

proval of the plans, maps, profiles, and surveys of the proposed municipal waterworks system for the village, and it was stated in the application that the village authorities are willing to acquire by purchase at a fair price the system of water supply of the water company. The approval was given and the necessary certificate made by the state board, and thereafter, and in May, 1906, the proposition to acquire the system of waterworks of the water company was voted upon by the voters of the village, and lost. It is not contended by the water company that it has an exclusive franchise, or that another water company may not be organized to supply water for the same territory, or that the village may not itself do that; but it claims that the village may not tax the company to maintain a system of waterworks in competition with its own. The case of Skaneateles Waterworks Company v. Village of Skaneateles, 161 N. Y. 154, 55 N. E. 562, 46 L. R. A. 687, is relied upon to sustain that claim. The plaintiff there sought to enjoin the village from constructing its own water system in competition with that of the water company (the plaintiff), but the injunction was refused, the court holding that the water company did not have an exclusive franchise, and that the village had the right to construct its own waterworks system. That decision was affirmed in the federal Supreme Court (Skaneateles Waterworks Company v. Village of Skaneateles, 184 U. S. 354, 22 Sup. Ct. 400, 46 L. Ed. 585). The act under which the village system was constructed in that case was attacked by the water company as unconstitutional, because it taxed the water company for the municipal system in competition with its own, and otherwise discriminated against it. The Court of Appeals held that, while the village had the right to construct its own system of waterworks, the provisions of the act for taxing the water company therefor and authorizing a discriminating tax against its patrons were unconstitutional, and the federal Supreme Court so understood the holding of the Court of Appeals. But, giving full force and effect to all that was said and decided in that case, we think it is not decisive of the question presented here. There the water company had a franchise for the entire village. It was furnishing an adequate supply of pure and wholesome water. The village refused to buy the water system of the water company or to take it by condemnation, although Skaneateles Lake, from which the water company was receiving its supply, was the only available place where an adequate supply could be obtained for the village. Here, at best, the water company has only a right to supply a portion of the village. Very likely the incorporation of the village did not impair the previous right of the water company to furnish water in the town of West Turin. Matter of City of Brooklyn, 143 N. Y. 596, 38 N. E. 983, 26 L. R. A. 270. Neither did it extend the water company's right to supply the entire village. There is nothing in the record before us to show what part of the village is in the town of West Turin, nor how its population is distributed, nor to what extent water is being furnished to that part of the village within the town of West Turin. As already stated, the affidavit of the president of the water company states that water is being furnished to a large part of the residents of the village and to some

customers outside. But, if the facts are correctly stated in the affidavit of the president of the village, and the supply has been inadequate and in some parts of the village entirely failed, and until the municipal system was installed the village was practically without fire protection, I do not see how the water company can reasonably complain of the construction of the municipal waterworks, or now resist the payment of taxes therefor levied upon its taxable property within the village. If it is true, as claimed on the part of the village, that the water company's water supply is inadequate, that may furnish a possible explanation for not acquiring the plant.

But it is said that the state water commission in approving the plans and granting the certificate to the village made it a condition that the village acquire the water system of the water company, and that the village has been guilty of bad faith in not doing so. Assuming that to be true, I fail to see how it furnishes sufficient ground for the failure of the water company to pay the tax. In the first place, it is not clear that the State Water Commission had the authority to impose any such condition (Village of Waverly v. Waverly Water Company, 117 App. Div. 336, 101 N. Y. Supp. 1070, affirmed in 189 N. Y. 555, 82 N. E. 1133); and, in the next place, if the water company has any legal grievance arising out of the construction of the municipal system of waterworks without acquiring the plant of the water company, I think its remedy is not by resisting payment of the tax, but by direct action for that purpose. It may be that the water company has been wronged, and that in a proper proceeding it may be made to appear that some part, if not all, of this water tax should not be levied against it, or that it is entitled to legal redress or equitable relief arising out of the construction of the village water system; but we think that should not be determined in this summary manner, on a motion to set aside the order in aid of the collection of the tax. Matter of White, 122 App. Div. 93, 106 N. Y. Supp. 738. The village authorities had jurisdiction of the tax debtor and of its property, and we think it has not been shown that the tax is void.

The order should be reversed, with $10 costs and disbursements, and the motion denied with $10 costs. All concur, except McLENNAN, P. J., and WILLIAMS, J., who dissent upon the opinion of Emerson, county judge.