70 U.S. 210
 18 L.Ed. 180
 3 Wall. 210
 TURNPIKE COMPANY
v.
THE STATE.
 December Term, 1865
 
 IN 1812 the State of Maryland incorporated a company to build a turnpike road between Baltimore and Washington. The company by its charter had power to take tolls and was bound to erect bridges and keep them and the road in good repair. In regard to its privileges generally, there was nothing special about it.
 In 1831 the same State granted a charter to a railroad company to make a railroad between the same cities, the line of which ran near to and parallel with the track of the turnpike.
 The turnpike company not having kept its road and bridges in repair, while it yet demanded tolls, the legislature of the State in 1860 directed their attorney-general to issue a scire facias against it, to forfeit its charter; which writ was issued accordingly.
 It was set up as a defence to the sci. fa. that the State had, in disregard of the Constitution of the United States, passed laws 'impairing the obligation of contracts,' in that with the grant of a charter to the turnpike company in force, it had incorporated a company to make a railroad right alongside of it, which second road had every year been transporting great numbers of persons and large amounts of property that but for it would have been carried on the turnpike, and had now by statute directed the sci. fa.; that the turnpike company being by the charter to the railroad corporation deprived of much of the income which but for this they would have received, it had become 'impracticable for them, with all the income that they received from such persons and property as pass upon the turnpike road, to maintain and keep it in any better order and repair than it was kept in.'
 The turnpike company further set up that the railroad had been made not only under the authority of the State but to a considerable extent with the State's own money; the State, in addition, managing it largely, and getting from it one-fifth of the whole amount received for the transportation of passengers.
 The Court of Appeals of Maryland, where the case finally got, considered the defence insufficient, and gave judgment of ouster of the franchise. The charter of the turnpike company was thus annulled. The case was now here on error.[1]
 Messrs. Dobbin and Robinson, for the turnpike company, plaintiffs in error, contended that the charter of 1812 made a contract, persons having parted with their property on the faith of it;[2] that under this charter the turnpike company had a right to take and enjoy the tolls and other privileges and immunities granted by it, and for which the original cost of constructing the road and the obligation, by continuing outlays to keep it in order, was a consideration. That the State, by authorizing a rival road, had violated that contract; and by diverting and carrying away the tolls from the turnpike company—as owing to the new road being a railroad and having greater facilities for carrying passengers and freight it did—it had, itself, disabled the turnpike company from keeping its road in repair. That the State having thus prevented the turnpike company from performing its duty, and still furthering a prevention—being itself a gainer moreover by what it did and was still doing—it could not take advantage of the resulting incapacity of the turnpike company to keep its road in order.
 The case was argued with profound reference to the books; and the learned counsel cited very numerous authorities, beginning with the Year Books, Keilwey, Sir Francis Moore, Bulstrode, Godbolt, and other early reporters,[3] and coming down to the latest of the modern,[4] to show a universal concurrence of the courts on the subject; and that it was an ancient, settled, and most just rule of law and morals, that a covenantor was discharged from his obligation when the party for whose benefit it is made has performed an act by which such covenantor is incapacitated to observe his contract; and that where forfeiture was the penalty provided for breach, the other party was not permitted to take advantage of it.
 Messrs. Randall and Poe, contra, citing among other cases, Charles River Bridge v. Warren Bridge;[5] Richmond Railroad Co. v. Louisa Railroad Co.;[6] Washington and Baltimore Turnpike Company v. Baltimore and Ohio Railroad Co.
 Mr. Justice NELSON delivered the opinion of the court.
 
 
 1
 The difficulty of the argument in behalf of the turnpike company, and which lies at the foundation of the defence is, that there is no contract in the charter of the turnpike company that prohibited the legislature from authorizing the construction of the rival railroad. No exclusive privileges had been conferred upon it, either in express terms, or by necessary implication; and hence whatever may have been the general injurious effects and consequences to the company, from the construction and operation of the rival road, they are simply misfortunes which may excite our sympathies, but are not the subject of legal redress.
 
 
 2
 It might have been very proper for the State, when chartering the railroad, to have provided for compensation for the prospective loss to the turnpike company, as has frequently been done in other States, under similar circumstances; but this was a question resting entirely with the legislature of the State, and their action is conclusive on the subject.
 
 
 3
 There is another answer to the defence in this case, even assuming that the charter of the turnpike company contained exclusive privileges that forbade the legislature of the State incorporating the railroad company.
 
 
 4
 The remedy was not in neglecting to repair the road, and at the same time collect the tolls. It was in restraining, by the proper proceedings, the railroad company from constructing their road. The breach of the contract on the part of the State furnished no excuse for the turnpike company in disregarding their part of it which was a burden, to wit, the repairs, while, at the same time, insisting upon the observance of the part beneficial, to wit, the collection of the tolls.
 
 
 5
 JUDGMENT AFFIRMED.
 
 
 6
 [See supra, p. 51; The Binghamton Bridge.]
 
 
 
 [1]
 Under the 25th section, of course, of the Judiciary Act of 1789. See supra, p. 57.
 
 
 [2]
 Hathorne v. Calef, 2 Wallace, 21; approving Curran v. State of Arkansas, 15 Howard, 313.
 
 
 [3]
 Among the early cases were: Joan, Queen of England, widow of Henry IV, v. Lyle, 9 Henry VI, Year Book of Henry VI, folio 44; Placitum 25, another case in the Year Book of 6 Edward IV, folio 1-2; Placitum 4: both explained in West v. Blakeway, 2 Manning & Granger, 745, notes c and b; Kilwey, 34 b, a case in 13 Henry VII; Bedels' Case, 2 Leonard, 115; Carrell v. Read, Owen, 65; S. C., Moore, 402; Slade v. Thompson, Cro. Jac. 374, S. C., Rolle, 136; City of London v. Greyme, Cro. Jac. 181; S. C., Moore, 877; Quick v. Ludborrow, 3 Bulstrode, 30.
 
 
 [4]
 Among the later cases, People v. Bartlett, 3 Hill, 570; Cort v. Amber gate Railway, 17 Adolphus & Ellis, New Series (79 English Common Law), 146; Pole v. Cetchovitch, 9 Common Bench, New Series (99 E. C. L.), 438.
 
 
 [5]
 11 Peters, 536-553.
 
 
 [6]
 13 Howard, 81.
 
 
 [7]
 10 Gill & Johnson, 392