STEIN *v.* BIENVILLE WATER SUPPLY COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF ALABAMA.

No. 344.   Argued April 28, 1891. — Decided May 11, 1891.

A contract with a municipal corporation, whereby the corporation grants to the contractor the sole privilege of supplying the municipality with water from a designated source for a term of years, is not impaired, within the meaning of the contract clause of the Constitution, by a grant to another party of a privilege to supply it with water from a different source.

Where a contract with a municipal corporation is susceptible of two meanings, the one restricting and the other extending the powers of the corporation, that construction is to be adopted which works the least harm to the State.

THE case is stated in the opinion.

*Mr. W. Hallett Phillips* for appellant.

*Mr. T. A. Hamilton* and *Mr. D. P. Bestor* for appellee.

MR. JUSTICE HARLAN delivered the opinion of the court.

This case presents a question under the clause of the Constitution of the United States relating to the impairment by state legislation of the obligation of contracts.

The appellant, who was the plaintiff below, claims that his testator, Albert Stein, deceased, acquired by valid contract, and to the exclusion of all other persons or corporations, the right and privilege, by a system of public works, of supplying the city of Mobile and its inhabitants with water, *from whatever stream or river drawn*, until that city should redeem and purchase the water works constructed and maintained by the testator in accordance with the terms of that contract; and that the obligation of such contract was impaired by an act of the legislature of Alabama, approved February 19th, 1883, incorporating the Bienville Water Supply Company. Acts of Alabama, 1882–1883, p. 451. In this view the court below did not concur, and it dismissed the bill for want of equity. 34 Fed. Rep. 145.

It will conduce to a clear understanding of the issue between the present parties if we trace the history of the question of water supply for Mobile and its inhabitants, as disclosed in the legislation of Alabama and in the action upon that subject, from time to time, of the constituted authorities of that city. This being done, the inquiry as to whether the above act of 1883 impairs the obligation of the contract that Stein had with the city can be solved without extended discussion.

The first act, to which attention is called, is that of December 20th, 1820, incorporating the Mobile Aqueduct Company.

Its preamble recites that "it has been represented, that it would be of singular advantage to the health and commerce of the city of Mobile, to be supplied with water from some of the running streams in its vicinity, which would be attended with too much labor and expense to be effected by laying a tax for the purpose," and that "it has also been represented, that certain individuals have agreed to associate themselves together for the purpose of conducting a supply of water from a creek called Three-Mile Creek, otherwise Bayou Chatogue, for the use of the citizens and other persons residing in the city of Mobile." In consequence of these representations certain named persons were constituted a corporation under the name of the Mobile Aqueduct Company, with authority to establish a channel or canal large enough to contain and conduct water in quantities sufficient to supply the citizens and other persons of Mobile. The act provided "that the said corporation and their successors shall have and enjoy the exclusive right and privilege of conducting and bringing water for the supply of said city for the space of forty years: *Provided*, The said corporation or their successors shall, before the expiration of three years, from the passage of this act, cause to be conducted the water *from the said bayou or creek*, to the said city of Mobile, in the manner hereinbefore proposed : And *provided also*, That, after the expiration of the said term of years, the said water works shall become the property of the said city, and shall be for the free use of the inhabitants thereof forever." Acts of Alabama, 1820, p. 72.

Nothing was done by this company. And by an act approved December 24th, 1824, amendatory of the charter of Mobile, the act of December 20th, 1820, was declared null and void, and all the rights, privileges and powers granted by it were transferred to and vested in that city for the use and benefit of its inhabitants. Acts of Alabama, 1824–5, p. 68.

On the 1st day of December, 1836, an agreement in writing was entered into between the city and one Hitchcock, whereby the former granted and leased to the latter, his executors and assigns, for the term of twenty years, the entire use, control, management, rents, profits and issues of the "Mobile City

Water Works," embracing the ground at Spring Hill, where the fountain was situated, and the ground along which the pipes passed from the fountain to the city, together with the use of all the wooden and iron pipes and logs then laid down, as well as all the advantages that had accrued to the city, from, by or under the above act of December 20th, 1820, and from all ordinances or resolutions passed by the city relating to said city water works.   This grant and lease were in consideration of the payment of certain sums, evidenced by Hitchcock's notes, and upon the condition, among others, that he would, within the space of two years from the date of the agreement, " put the said water works in good and sufficient repair, so as to continue during the time hereby granted, and will also keep up the said water works in good order as they now are until they shall be so placed in good order and repair, so that the city of Mobile, and the inhabitants thereof, may at all times be supplied with such quantity of good, wholesome water as may be procured through the said aqueduct;" such water works to be surrendered to the city in good order and condition at the end of the twenty years, Hitchcock being paid what they actually cost him during that time.   That contract also provided that Hitchcock, his executors, administrators and assigns,  should, during said term of twenty years, " have the exclusive privilege of furnishing to the citizens and inhabitants of the city of Mobile water *from the aqueduct or water works aforesaid*, at a sum or price which shall at no time be less" than certain named rates; and that he shall have "the power and authority to make such alterations and repairs upon the said works, and to erect such new work, and in such manner as he may deem necessary and proper, and may at will change the fountain head, and conduct the water *from any part of Three-Mile Creek*, so called, so that the same be good and wholesome, he, the said Henry Hitchcock, procuring, at his cost, the necessary ground for the reservoir or reservoirs and that through which the pipes shall pass.   And the said mayor and aldermen of Mobile, for themselves and their successors in office, hereby further covenant and agree, that they will, at the expiration of the said term of twenty years, (he, the

said Henry Hitchcock, his executors, administrators or assigns, delivering up the said 'water works' and appurtenances in good order and repair,) pay to him or them the actual cost and expenses which he or they shall have laid out and expended, and which may be put upon the said works by him or them, or any of them, either by reason of repairs, or addition to the present works, as by alterations or improvements made upon the said water works during the said term of twenty years above stated."

Subsequently, December 25th, 1837, an act was passed incorporating the Mobile Aqueduct Company, to continue until December 1st, 1856, and until it should have been "purchased out" by the city of Mobile, during which period it was to have and enjoy all the rights, privileges and immunities conferred by the above act of December 20th, 1820, except as modified by the act of December 25th, 1837, the former act being revived and declared to be in force during the continuance of the latter one. The 5th section of the act of December 25th, 1837, recognized and confirmed the contract between the city and Hitchcock, and provided that upon its assignment to the new company, (which he was authorized to make,) the same was to enure to its benefit, and should be subject to all the covenants therein contained to be performed by Hitchcock. That act further provided that the new company "shall be permitted the use of the streets in the city of Mobile, free of charge, for the purpose of laying down pipes for the conveyance of the water;" also, "that so soon after the first day of December, 1856, as the said corporation of Mobile shall pay to the said company, the cost of the said work, in conformity with their contract, before referred to, with the said Henry Hitchcock, then this act shall cease to operate and not before: *Provided,* That the said company shall have power to collect its debts and wind up its affairs." Acts of Alabama, 1837, p. 76.

Shortly after the passage of the act of December 25th, 1837, the water works property again passed into the possession of the city of Mobile, and the building of the system contemplated by that act was abandoned.

On the 26th day of December, 1840, the city of Mobile and Albert Stein, the testator of the plaintiff, entered into a written agreement, whereby the city granted to him, his heirs, executors, administrators and assigns, the "sole privilege. of supplying the city of Mobile with water *from the Three-Mile Creek* for twenty years from the date of this agreement, as well as all the advantages and benefits which accrue to the said mayor, aldermen and common council from, by or under an act of the legislature of the State of Alabama entitled an act to incorporate an aqueduct company in the city of Mobile, passed December 20th, 1820, and all ordinances and resolutions passed by the said mayor and aldermen of the city of Mobile, under and by virtue of the said act, or by the act of incorporation of the said city of Mobile, and the several acts amendatory thereto, which in any way or manner relate to the said 'City Water Works,' or the right to supply said city with water, as well as all the benefits and advantages which accrue to the said mayor, aldermen and common council, or the mayor and aldermen of the city of Mobile, from, by or under an act of the legislature of the State of Alabama, entitled an act to incorporate the Mobile Aqueduct Company, passed December 25th, 1837; to have and to hold the *above-mentioned and described privileges* together with all and singular the appurtenances unto the same belonging, or in anywise appertaining, unto the said Albert Stein, his executors, administrators and assigns, from the date hereof, for during and until the full end and term of twenty years thence next ensuing."

The city covenanted and agreed that it would, at the expiration of the said term, (Stein delivering up the water works and appurtenances in good order and condition,) pay him, his executors, administrators or assigns, their actual value, as determined by six arbitrators, three to be chosen by each side, whose award should be binding; but in case of disagreement, the value to be left to the determination of the water committee of Philadelphia, and their decision, communicated to the city, to be conclusive; and the amount so awarded to be paid on the day it should be reported, when the water works and

all appurtenances should be delivered over to the corporation of Mobile.   The city also covenanted that Stein, his executors, administrators and assigns, " shall have quiet possession of the said works, during their erection and after they shall be completed, for the term of twenty years, and for any further time, until the said parties of the first part [the city authorities], or their successors in office, shall redeem the said works from the said party of the second part [Stein], his heirs, executors, administrators or assigns, according to the aforesaid stipulation ; " that Stein, his executors, administrators and assigns — he and they performing the stipulations of the contract up their part to be performed — " shall and may retain quiet possession of the said water works for the said term of twenty years without let, molestation or hindrance of the said mayor, alderman and common council, or their successors in office, or any person or persons claiming by, through or under them ; and that the said Stein, his executors, administrators and assigns, shall, during the said term of twenty years, or any further time, until said works are redeemed as above stipulated, have the exclusive privilege of supplying to the citizens and inhabitants of the city of Mobile water from the water works aforesaid, at the sum or price which shall at no time exceed " certain named rates to be paid by the person receiving the water.   This contract specified the maximum rates to be charged to persons receiving water.   Stein, his executors, administrators and assigns were given power to collect and receive these rates, and " power and authority to conduct the water *from any part of the ' Three-Mile Creek,'* so-called, so that the same may be good and wholesome, he, the said Albert Stein, his executors, administrators or assigns, procuring at his or their expense the necessary ground for the reservoir, engine and pump-house, and that through which the pipes shall pass."

By an act of the legislature, approved January 7th, 1841, entitled " An act for the promotion of the health and convenience of the city of Mobile by the introduction of a supply of wholesome water into said city, to be used for domestic purposes and the extinguishment of fires," this last agreement was fully

confirmed, and all the rights, powers, privileges and immuni-
ties granted by the acts of December 20th, 1820, and December
25th, 1837, not inconsistent with the terms of such agreement,
were granted and confirmed to Stein and his assigns, with full
authority to use such of the public roads of the county "as
may be in the direct route between the reservoir and fountain
head of the water works hereby to be erected, and the
city of Mobile, for the purpose of laying the pipes for con-
ducting the water into the city, free from all charge or claim
for damage therefor," and with power to dispose of or mort-
gage any of said privileges, rights and immunities.

The bill alleges, and the demurrer admits, that Stein, in
good faith, set about, and out of his own private fortune and
by borrowing money from others, raised the means to build,
and did construct, at an outlay and expense of more than two
hundred thousand dollars, a system of public water works to
supply said city of Mobile and the inhabitants thereof with
water, in strict conformity to and compliance with the afore-
said contract and agreement; that he and his executor have
ever since maintained and kept the same in good order and
condition and in all respects observed the aforesaid contract
and agreement; that the said city of Mobile has not redeemed
or purchased, or offered to redeem or purchase, said water
works property, as by said contract it agreed to do, although
said period of twenty years has long since expired; that in
the year 1879 the legislature of the State of Alabama repealed
the charter of the city of Mobile and immediately thereafter,
and at the same session of the legislature, passed an act incor-
porating the municipal corporation known as the "Port of
Mobile," embracing, however, substantially the same territory
and people and public property as that included in the city of
Mobile; and that said municipal corporation called the "Port
of Mobile" succeeded to all the rights, powers and authority
possessed by the said city of Mobile, and said port of Mobile
recognized the validity, efficacy and continuance of the above
contract of December 26th, 1840.

The Bienville Water Supply Company was incorporated by
an act approved February 19th, 1883, which was amended by

an act approved February 14th, 1885. The preamble recites that "whereas the inhabitants of the municipality known as the Port of Mobile, and the inhabitants of the village of Whistler, in the county of Mobile, are not provided with an adequate supply of water for domestic and municipal purposes; and whereas, it is essential to the public health of the citizens of those towns, and to the protection of their property and the public property therein, against conflagration, that an abundant supply of water should be introduced and furnished to said citizens; and whereas, a company of citizens of said county propose to undertake the duty of furnishing such supply to said towns for the public use and benefit." By the 6th section of the act that company was charged with the duty of introducing into the Port of Mobile and the village of Whistler, in Mobile County, such supply of pure water as the domestic, sanitary and municipal wants thereof might require; and for this purpose it was authorized to construct all needed canals and ditches, and, by pipes and aqueducts as might be found best suited for the purpose, to carry into said towns, by such lines or route as might be found best, such water as was needed, from any point in that county within twenty miles of the port or city of Mobile.

The same act provides, among other things : "§ 9. That the said corporation hereby created is hereby invested with all the rights and powers, which by law or contract was vested in the late municipal corporation, known as 'the mayor, aldermen and common council of the city of Mobile,' by redemption, purchase or otherwise, to acquire from any and all other persons, corporations or associations whatever, any and all property and rights by such person or persons, corporations or associations, held under any former contract or law whatever for the introduction and supply of water into the city of Mobile, or the inhabitants thereof, and for such purpose said Bienville Water Supply Company shall be held and taken to be the assignee of the said 'mayor, aldermen and common council of the city of Mobile,' and may proceed to assert said rights, and exercise said powers thus assigned, the same as could have been done by the municipal corporation aforesaid,

and for this purpose the commissioners of Mobile, appointed under and by virtue of 'An act to vacate and annul the charter and dissolve the corporation of the city of Mobile,' approved February 11th, 1879, are hereby authorized, on the demand of said corporation, to release to said corporation all the rights of said late city of Mobile in and to such right of redemption, purchase or other acquisitions of such property or rights.

"§ 10. That said Bienville Water Supply Company be, and is hereby, authorized to acquire by contract with any person or persons, corporation, company or association, claiming any right to supply the port or city of Mobile or the inhabitants thereof with water, such right or rights as he or they may have in the premises, and the property owned and used in connection therewith, and pay therefor such amount of money as may be agreed upon, or such amount as may be agreed upon in stock of the said supply company ; and in case of failure by contract to obtain such right and property, then said corporation hereby created, may proceed as directed by law, for the condemnation and the taking of private property for public use, to obtain the same for the purpose of the public use and benefit herein declared of furnishing the port of Mobile and the village of Whistler, and the inhabitants thereof, with an adequate supply of water for domestic, sanitary and municipal purposes.

"§ 11. That said corporation shall have and enjoy the exclusive right of conducting and bringing water from any point, *other than Three-Mile Creek* in the county of Mobile, for the supply of said port of Mobile and village of Whistler, for the period of twenty years from the time when said water shall have been brought within the limits of the port of Mobile, and be ready for distribution and supply to the inhabitants of the port of Mobile, and the houses and dwellings within the limits of said port. And till the municipal authorities of said port and village, if so by law authorized, shall purchase the water works and property of said corporation as hereinafter provided, but said corporation within four years from the passage of this act, must begin its works, and within six years from the date of the passage of this act, must cause

water to be conducted into the port of Mobile from some stream, point or place as hereinbefore named, and if and when any existing claim to conduct water into Mobile from Three-Mile Creek, or any other point without the limits of said port, has been obtained by this corporation, then said corporation shall have the exclusive right to supply said Port and village and the inhabitants thereof with water for the period and the term aforesaid. But nothing in this act shall be construed to prohibit the organization hereafter of any company for the purpose of supplying the city of Mobile or any other place with water which does not interfere with the property rights or rights of obtaining water pertaining to this company. . ."

The plaintiff, alleging in his bill that the Bienville Water Supply Company were engaged in laying down pipes and mains for the avowed purpose of conducting water into Mobile to supply that city and its inhabitants, prays that the defendant may be enjoined from laying pipes in, along or through the streets and alleys of the city for such a purpose, and that it be perpetually enjoined from interfering with the exclusive right and privilege which the plaintiff, representing the estate of Albert Stein, claims of supplying Mobile and its inhabitants with water under the contract of December 26th, 1840, until that city shall redeem and purchase, at their actual value, the water works constructed and maintained by the testator under that contract.

The present case is not controlled by *New Orleans Water Works Company* v. *Rivers*, 115 U. S. 674, and *St. Tammany Water Works* v. *New Orleans Water Works*, 120 U. S. 64, to which counsel have referred. The first case involved the validity and effect of a contract between the city of New Orleans and the New Orleans Water Company, whereby the former, acting under legislative authority, granted to the latter, for the term of fifty years, the exclusive privilege of supplying that city and its inhabitants " with water from the Mississippi, *or any other stream or river*, by mains or conduits, and for erecting and constructing any necessary works or engines or machines for that purpose." Subsequently, under the sanction of a new state constitution, adopted after that

contract was made, the city passed an ordinance allowing
Rivers or the lessee of the St. Charles Hotel, the right of way
and privilege to lay a water pipe from the Mississippi River
at any point opposite the head of Common or Gravier streets,
through either of those streets, to convey water to that hotel.
This court held the grant to Rivers to be inconsistent with
the previous one to the Water Works Company, and that the
provision in the new constitution of Louisiana and the ordi-
nance under which Rivers proceeded, impaired the obligation
of the city's contract with the Water Works Company.   It
was said: " The right to dig up and use the streets and alleys
of New Orleans for the purpose of placing pipes and mains to
supply the city and its inhabitants with water is a franchise
belonging to the State, which she could grant to such persons
or corporations, and upon such terms, as she deemed best for
the public interests.   And as the object to be attained was a
public one, for which the State could make provision by legis-
lative enactment, the grant of the franchise could be accom-
panied with such exclusive privileges to the grantee, in respect
of the subject of the grant, as in the judgment of the legisla-
tive department would best promote the public health and the
public comfort, or the protection of public and private prop-
erty.   Such was the nature of the plaintiff's grant, which, not
being at the time prohibited by the constitution of the State,
was a contract, the obligation of which cannot be impaired by
subsequent legislation, or by a change in her organic law; "
the constitutional prohibition upon state laws impairing the
obligation of contracts not, however, restricting " the power
of the State to protect the public health, the public morals or
the public safety, as the one or the other may be involved in
the execution of such contract," because " rights and privileges
arising from contracts with a State are subject to regulations
for the protection of the public health, the public morals and
the public safety, in the same sense as are all contracts and all
property, whether owned by natural persons or corporations."
In *St. Tammany Water Works* v. *New Orleans Water Works*,
we maintained the contract which the New Orleans Water
Works Company had with the city against another corpora-

tion that claimed the right, under the general laws of Louisiana — and was about to take active steps in its enforcement — of bringing water into New Orleans by means of pipes, laid in the streets of that city parallel with those constructed by the New Orleans Water Works Company, to convey water from Bogue Falaya River, in the parish of St. Tammany. As the exclusive right of the New Orleans Water Works Company to supply the city of New Orleans and its inhabitants with water was not restricted to water drawn from the Mississippi, but embraced water from "any other stream or river," the case was held to be controlled by the decision in *New Orleans Water Works Company* v. *Rivers.*

The present case is materially different. The exclusive right acquired by Stein, under his contract of 1840, with the city of Mobile, and confirmed by the act of January 7, 1841, of supplying that city and its people with water, by means of a system of public works, did not, in terms or by necessary implication, embrace all streams, or rivers or bodies of water, from which he could supply water for public use in Mobile. While the obtaining of water for that city was undoubtedly contemplated by the legislature when it passed the first act, that of 1820, the thing done to that end was to incorporate certain persons proposing to bring water to the city from Three-Mile Creek or Bayou Chatogue. And this idea was apparent in the agreement of 1836 with Hitchcock. So, by the agreement with Stein, he, and his heirs, executors, administrators and assigns, acquired the "sole privilege of supplying the city of Mobile with water *from the Three-Mile Creek*" for a designated term of years, as well as after the expiration of that term and until he or they should receive from the city the actual value of his water works, determined in the mode prescribed by the contract. The specific power and authority given to Stein and his executors, administrators and assigns, by the city and the State, was "to conduct the water from any part of the Three-Mile Creek, so called, so that the same be good and wholesome." Why the parties, in making their agreement, specified a particular stream from which Stein was to conduct water into the city of Mobile for public use does

not distinctly appear. And it is not necessary to inquire; for the question before us depends upon the fair and reasonable interpretation of the agreement actually made. The court has no right to enlarge it, even if it believed that the parties themselves would have done so, if the matter had, at the time the agreement was signed, been called to their attention. The exclusive privilege granted, and the power and authority conferred in connection therewith, were to conduct water into the city from Three-Mile Creek. The parties, by the agreement, fixed upon that stream as the source of the water to be brought into the city; and the exclusive privilege granted to Stein had reference only to that stream.

The case then is this: The State incorporated the Bienville Water Supply Company, and conferred upon it the exclusive right, for a term of years, to supply the port of Mobile with water conducted and brought *from any other point than* Three-Mile Creek. The plaintiff seeks a perpetual injunction against the exercise of that right, and in support of his claim of an exclusive privilege of supplying water for Mobile and its people, from whatever source drawn, exhibits the contract which granted to Stein the exclusive right to supply that city and people with water brought from Three-Mile Creek for a fixed term of years, and until his works were redeemed by the city. The exercise by the defendant of the exclusive right granted to it will not interfere with the only exclusive privilege acquired by the plaintiff under the contract of 1840, confirmed by legislative enactment in 1841, namely, to conduct water for the use of Mobile and its people from Three-Mile Creek. If the contract under which the plaintiff claims was doubtful in its meaning, the result would not be different; for, while it is the duty of the courts not to defeat the intention of parties to a contract by a strained interpretation of the words employed by them, it is a settled rule of construction, that, "in grants by the public nothing passes by implication;" and, "if, on a fair reading of the instrument, reasonable doubts arise as to the proper interpretation to be given to it, those doubts are to be solved in favor of the State; and where it is susceptible of two meanings, the one restricting and the other extending the

powers of the corporation, that construction is to be adopted which works the least harm to the State." *The Binghamton Bridge*, 3 Wall. 51, 75. Guided by this rule, in respect to which there is no difference of opinion in the courts of this country, we are forbidden to hold that a grant, under legislative authority, of an exclusive privilege, for a term of years, of supplying a municipal corporation and its people with water drawn by means of a system of water works from a particular stream or river, prevents the State from granting to other persons the privilege of supplying, during the same period, the same corporation and people with water drawn in like manner from a different stream or river.

The relief asked was, in effect, an injunction perpetually restraining the defendant from supplying the port and people of Mobile with water drawn from rivers or streams other than Three-Mile Creek. That was the object of the suit, and the decree below must be restricted to a denial simply of that relief. Thus restricted, and without deciding any other question, the decree dismissing the bill must be

*Affirmed.*

MR. JUSTICE BRADLEY did not participate in the decision of this case.