SOUTHWEST MISSOURI LIGHT CO. v. CITY OF JOPLIN, MO.

(Circuit Court, W. D. Missouri, W. D. February 7, 1902.)

No. 2,419.

1. MUNICIPAL CORPORATIONS — CONTRACTS—ORDINANCE GRANTING FRANCHISE TO ELECTRIC LIGHT COMPANY.

The statute of Missouri (Laws 1891, p. 60) which authorizes a city to erect and operate electric light or water works: "Provided, that the council may * * * grant the right to any person or persons or corporation to erect such works * * * upon such terms as may be prescribed by ordinance: provided, further, that such right * * *

113 F.—52

shall not extend for a longer period than 20 years,"—provides two alternative methods by which a city may secure lights or water for its inhabitants; and where a city has acted under the second method, by passing an ordinance granting the right to erect and maintain electric light works for 20 years, and fixing the terms, rates of charge, etc., such ordinance, when accepted and acted on by the grantee, creates a valid contract, an implied term of which is that the city will not within the 20 years erect works of its own and enter into competition with the grantee in furnishing lights to private consumers.

2. CONSTITUTIONAL LAW—IMPAIRMENT OF OBLIGATION OF CONTRACT—CITY OR-
DINANCE.

An ordinance passed by a city, under assumed authority from the state, providing for the erection of electric light works for the purpose of supplying lights to its inhabitants, in competition with an electric light company, in violation of the implied terms of a contract made by a prior ordinance granting a franchise to such company for a term of years, is a law impairing the obligation of contracts, within the meaning of the contract clause of the federal constitution.

In Equity. Suit for injunction. On final hearing.

Trimble & Braley and John A. Eaton, for complainant.

C. A. Montgomery, Hugh Dobbs, and Lathrop, Morrow, Fox & Moore, for respondent.

McPHERSON, District Judge. Both complainant and respondent are citizens of the state of Missouri, and, the amount in controversy being sufficient, this court acquires jurisdiction because of the federal question presented,—the alleged impairment by defendant city of its contract with complainant, entered into by an ordinance conferring the right to establish an electric light system. This case was before this court on an application for a temporary injunction, and, the writ being granted, an opinion was filed. For the purpose of abbreviating this opinion, I refer to the former opinion, as found in 101 Fed. 23. Counsel before me in oral argument and in their printed briefs in no way criticise the former opinion as to the statement of facts, and the analysis generally of the situation; the contention being as to the conclusions of law in the opinion stated. And since that opinion was filed, the record, either by pleadings or the evidence, has not materially changed. In my judgment, the only questions of importance now presented were then presented. As I view the case, the question whether a light, and what kind of a light, was kept at the porch on Freeman's Foundry, is in no sense pivotal, let the facts be as they may. The same is true as to whether complainant at all times furnished lights up to the standard of the contract. In all such cases, in all contracts for public services, such as schools, churches, public franchises, such as street car service, gas lighting, telephones, and electric lighting, complaints are made. The complaints may be well founded in part, and may be made partly because of the right, real or supposed, to be in opposition to what exists. If defendant city operates a system of electric lighting, it will meet with like complaints. But many of these alleged shortcomings were adjusted by the city reducing complainant's bills. But in no event were any of these things of such importance as to warrant the city in avoiding its contract, if a contract exclusive in its character were made.

The complainant has erected its power house at some waterfall some

few miles outside the city limits. And this, it is claimed, is such a violation of the alleged contract as to warrant the defendant city in abrogating the contract. The very statute under which the ordinance in question was adopted provides that, when the city erects the lighting plant, it may exercise the power of eminent domain, outside the city limits, for right of way for pipe lines and other conveniences and necessities. The substantial thing required of complainant, under the ordinance, was to furnish electric lights. The city was and is in no way wronged or prejudiced by the fact that the electricity was conveyed from out in the country by wire into the city. And the small amount of taxes the city would lose because of the assessment of the power house by some country precinct is too trivial to discuss, and I only mention it because it is in the record. If the contract were made to induce the erection of the property for taxation, then let the city charge complainant with the taxes. But it is idle to claim that such was the purpose. The contract was to secure lighting. I can serve no purpose by analyzing and discussing the several things done, finally vesting in complainant all the rights under the ordinance in question. That it has all the rights conferred by the ordinance, I have no doubt; and the city from the first has so treated it, and at all times so recognized. I do not care to give any of the foregoing matters further attention. No one of them, as well as other matters singly, nor all combined, are in any sense controlling in this case, while I suspect that most of them are afterthoughts, arising when considering the defense to this action.

The question the deciding of which rules this case is a very important one, and is not easily solved. To it I have given much time. It arises upon the following statement: The statute of the state of Missouri, section 1519 (Laws 1891, p. 60), is set forth in the former opinion herein. 101 Fed. 24. It will be seen that a city is authorized to erect, maintain, and operate electric light works in the city, to light the streets, and to supply the inhabitants with light for their own use, and to establish the rates therefor, all of which may be done and prescribed by ordinance. Then the statute recites: ·

"Provided, the city may * * * grant the right to any person or persons or corporation to erect such works * * * upon such terms as may be prescribed by ordinance: provided, that such right * * * shall not extend for a longer period than twenty years." Laws 1891, p. 60.

Subsequent to the passage of that statute the defendant city adopted an ordinance authorizing complainant (its grantors) to erect an electric lighting plant in the city; and at great expense the plant was erected, and has since been maintained and operated. This ordinance of October 7, 1891 (No. 441), while conferring benefits upon complainant or its grantors, is quite drastic, and with much detail protected the rights of the city, and placed burdens upon the complainant. Private parties, as well as the public, were to be protected from all damage in the erection of the works and the occupancy of the streets and alleys. The work was to be commenced promptly and consummated with dispatch. The size and the placing of the poles were all provided for. The printing of the ordinance was to be paid for by complainant. The rates to be charged private consumers were fixed by the ordinance.

And all these requirements were complied with. The ordinance does not require the city to take street lights from complainant, and it was required to furnish one at a railroad crossing, which was to be, and has been, at no expense to the city. Shortly before this action was brought, the city adopted an ordinance providing for the erection by it, as by it claimed, by virtue of the statute hereinbefore alluded to, of a system of electric light works, with which it proposes to light its streets, and also to furnish lights to the inhabitants as private consumers. The purpose seems to be to enter into competition with complainant. That the city can, regardless of the ordinance, light its streets, I have no doubt. At all events,—and be this as it may,—the complainant cannot and does not make complaint as to that. But is the contract, by ordinance, between the city and complainant, impaired, and therefore in violation of the constitution, which recites, "No state shall * * * pass any * * * law impairing the obligation of contracts"? And whether the state as a state, or the state through a municipality, does the act complained of, the same inhibition applies. The history of the proposal of this constitutional provision, and what led up to it, and its adoption, as portrayed by Bancroft, as well as by others, and notably by Justice Samuel F. Miller, is to me one of the most interesting phases of our history. And the evils sought to be avoided and prohibited were, perhaps, after the commerce clause, and a few others, the important work of the convention. And to impair a contract does not mean to destroy it. If the rights under a contract are practically taken away, the contract is impaired. And another thing must be kept in mind: A city council, in adopting ordinances, acts sometimes in one capacity, and sometimes another. Some ordinances are legislation, making laws for the government of the people of a city. In so doing it is acting in a legislative capacity. Such ordinances are always and at all times subject to repeal, amendment, or modification. Other ordinances are enacted by the council under statutory authority granted, when the council is not acting in a legislative capacity, but in a business capacity. And such was Ordinance No. 441, under which complainant erected its plant, and has since operated it. There is no provision of the constitution of the state of Missouri bearing upon the question. And the legislature of the state has adopted no subsequent statute upon the subject,— facts to be kept in mind in view of some of the cases cited, and later to be noticed. The statute of 1891, before referred to, and the ordinance (441) must be considered and construed together. And the validity and regularity of the adoption of the ordinance are not questioned. Nor is it suggested that the ordinance is in excess of the statutory authority. The general scope of the statute is to authorize the city, by its council, to erect, maintain, and operate a lighting system by the agency of electricity. On that subject the statute is full and complete, and the unquestioned power is conferred upon the city. But in the same statute, and in the very same section, is a negative' in the shape of a proviso. This proviso is that, instead of the city erecting and operating the plant, it may confer such privileges and impose the burdens upon persons or a corporation, such persons or corporation consenting' thereto. And is it not a strained and unwarrant-

ed interpretation of the statute to say that the legislature conferred authority upon the city to do both at one and the same time? Does not the statute in effect provide that the city may erect and operate the plant, or it may have it done by some person or corporation? And I fully agree with all that is said in the former opinion herein as to how any statute shall be construed. The implied provisions and the spirit of the statute are as much of the statute as the express provisions. And the courts are no more justified in riding down the implied provisions and the spirit of the law than they would be in riding down the express provisions. "For the letter killeth, but the spirit giveth life," is well to keep in mind in the court room as well as elsewhere. The plain meaning of this statute, to me, is that the city may do one or the other thing, and only the one thing at a time. The city made its election. In the fall of 1891 it said, in effect, that it either could not, or, if it could, it would decline to exercise its right to, erect a plant. But it would, if it could, find some person, and grant the right to another. Terms were proposed, and those terms were accepted. By those terms complainant was to erect its plant within a certain time, and in a certain way, and pay certain expenses, and save the city harmless from damages, and furnish the city at a crossing a light free, and furnish the inhabitants lights for their houses and shops and stores at certain fixed rates. It is of little concern how the city accepted those terms,—whether in writing or verbally or by the acquiescence of both parties. The terms were accepted, and for years so regarded by both parties, and so acted upon by both parties. The council, acting in a business capacity, as above stated, proposed the terms, and complainant accepted. Why was a contract not then made? What element or phase of a contract was then lacking? One may possibly be suggested, but I can conceive of none. After the contract was made, the complainant erected its plant, and in so doing expended its money, assuming that under the statute the contract would continue in force for 20 years, at which time the whole matter will be relegated back to the people. But after a few years the officers of the city change, and they conclude that public ownership is the better way. And perhaps it is. But because one party to a contract changes its mind, and concludes that the contract was an improvident one, does not justify the abrogation of the contract. This can only be done by mutual consent, and in the case at bar the mutual consent to abrogate the contract is lacking. And I know of no reason why the government or a state or a county or city should not with the same good faith, in letter and in spirit, observe contracts, as is expected from individuals. And while every one ought to agree to this, yet the fact remains that, of all the cases taken to the supreme court under the constitutional provision in question, the greater number of cases are those where some subsequent municipal body concludes that it will not observe the contract fairly made by its predecessor.

That a contract was made, I have no doubt. What was the contract? Complainant was to erect the plant at its sole expense, and do so in the way above enumerated. It was to operate its plant at its sole expense. It was "to supply private lights for the use of the inhabitants of the city and its suburbs," in the language of the statute.

It is true that this quotation is taken from the part of the statute providing for the city to erect its own plant. But in the proviso the same power and rights are conferred upon the persons when they erect and operate them. The complainant was obligated to erect its works, place its poles, and string its wires. Its only compensation, and the only way it could be reimbursed, was to charge the private consumers. And it was to charge the private consumers the ordinance rates. What consumers did the ordinance contemplate? All those needing the lights, and able and willing to pay the ordinance rates. Such was the contract. Has it been impaired? The contract was to extend for 20 years. But if the city can now erect its plant, and place its poles, and string its wires by the side of complainant's, and charge the same, it is not speculative to say that, for the same service, complainant will do no business. Every inhabitant of Joplin is a partner with all the others, and every man of sense, for the same service at the same price, will patronize his own concern, and thereby increase the profits in which he will participate in one form or another. And then complainant will have a mere naked contract on paper, with the poles standing in the street, and its power house idle. That is not only an impairment, but a wiping out, of its contract. My own views are, independent of the cases, this should not be allowed. I regard the following cases in point: Walla Walla Water Co. v. City of Walla Walla (C. C.) 60 Fed. 957; Id. 172 U. S. 1, 19 Sup. Ct. 77, 43 L. Ed. 341. In that case the city agreed not to build during the term covered by the contract. And in the case at bar the same agreement was impliedly made. The case of Westerly Waterworks Co. v. Town of Westerly (C. C.) 75 Fed. 181, is directly in point. The only criticism that can fairly be made of the case is that it was in a trial, and not in an appellate, court. But the reasoning of the opinion and the authorities cited make an unanswerable argument. Hamilton Gaslight & Coke Co. v. City of Hamilton, 146 U. S. 258, 13 Sup. Ct. 90, 36 L. Ed. 963, is urged by the defendant herein, with earnestness, as supporting its contention. But that case is not in point, for several reasons. In that case the ordinance was not passed under legislative authority. In the case at bar the ordinance (No. 441) was passed under legislative authority. In that case the contracts had expired by limitation. In the case at bar the contract would not expire for 10 years from the time this action was commenced. Nor is the case of Stein v. Water Supply Co., 141 U. S. 67, 11 Sup. Ct. 892, 35 L. Ed. 622, in point. In that case the contract was to bring water from a particular river, while the new contract was to bring water from another source. In Washington & B. Turnpike Co. v. Maryland, 3 Wall. 210, 18 L. Ed. 180, the old contract was with reference to a turnpike, while the new one was with reference to a railroad for the carrying of people who might never have used the turnpike.

At present I do not see but that the case of Thompson-Houston Electric Co. v. City of Newton (C. C.) 42 Fed. 723, decided by Judge Shiras, is in opposition to my views. The same ordinance was again before the same court in Levis v. City of Newton (C. C.) 75 Fed. 884, and it was held that the rights conferred by the ordinance could not be taken away by a repealing ordinance. And that decision was affirmed;

by the circuit court of appeals for this circuit in 25 C. C. A. 161, 79 Fed. 715. The question now under consideration was not decided, the court observing that the question is "serious and doubtful."

The case of In re City of Brooklyn, 143 N. Y. 596, 38 N. E. 983, 26 L. R. A. 270, is not in point, because in that case the ordinance was construed as not granting an exclusive franchise to a company, and the second ordinance granted another franchise to another corporation, —a very different question from the one now under consideration. The same can be said of the great and leading case of Charles River Bridge v. Warren Bridge, 11 Pet. 536, 9 L. Ed. 773. And there are a great many like cases, which I do not take the trouble of citing. But these cases are in no way in point, because no such question is in the record in the case at bar. The city of Joplin has not, by ordinance or resolution, conferred or attempted to confer a like franchise upon another. It must be kept in mind that what is complained of is that the city itself is about going into the business of furnishing commercial lights inside the city limits. The effect of doing that is the question, and is the only question, in this case. I do not contend that all of the cases are in harmony. But I do contend that the weight of the authorities support these views. No case has yet been decided by the supreme court or by the circuit court of appeals for this circuit to the contrary. I regard the Walla Walla Case, above cited, by the supreme court, as controlling, because I believe that the implied provisions and the spirit of a contract are just as binding as are the express provisions. And when the city agreed that, if complainant would erect the plant, it would have the business of the private consumers at the ordinance rates, I believe that the city impliedly agreed to not itself erect a plant. Such, as it seems to me, was the spirit of the agreement. And if that be so, then the Walla Walla Case becomes controlling. The city did not, as is often done, reserve any right in the ordinance to alter or amend it. Therefore I conclude that fair dealing requires the city to abide by its contract until it expires by limitation, the end of 20 years from the adoption of the ordinance.

The decree will be for the complainant, and the temporary injunction will be made permanent.