**OHIO ELECTRIC POWER CO. v. VILLAGE OF OBERLIN, OHIO, et al.**

**No. 4712.**

District Court, N. D. Ohio, E. D.

Dec. 22, 1933.

Tracy, Chapman & Welles, of Toledo, Ohio, and Howell Wright, of Cleveland, Ohio, for plaintiff.

Andrews, Hadden & Burton, of Cleveland, Ohio, for defendants.

WEST, District Judge.

Since this case was heard on motion to dismiss the bill, plaintiff has applied for a temporary injunction, and the matter being urgent, the case has been advanced for trial upon the merits and heard accordingly.

So far as the existing contract under Ordinance No. 37, by which plaintiff agreed to furnish and operate a street lighting system and supply current for the operation of a pumping plant for the village for ten years from January 1, 1928, is concerned, the town consents to an injunction which will forbid it from refusing to perform the terms of that contract (Exhibit 11A); and decree will issue in plaintiff's favor to that extent.

Two other ordinances are involved, as well as proceedings relating to issuance and sale of bonds for erection or purchase of a municipal light and power plant. No proof was offered to show invalidity of the bond proceedings, and plaintiff is not entitled to any relief respecting them, unless the bonds and their proceeds are to be so employed as to invade plaintiff's rights under the Federal Constitution respecting the subject-matter of the other ordinances. These are No. 38, adopted December 7, 1927, which grants plaintiff a twenty-year franchise from May 1, 1928, to use the streets of the village for erecting, maintaining, and operating an electric system to furnish current for lighting, heating, and power, for public and private use; and No. 35, adopted November 16, 1927, which fixed rates for residence and commercial service for ten years from January 1, 1928.

Section 5 of the franchise ordinance reserves to the village the power to grant similar rights to others. But neither ordinance contains any provision by which the town expressly or impliedly binds itself not to build or acquire its own plant or furnish light, heat, or power therefrom.

It is conceded that Oberlin has ample constitutional and statutory power to proceed under these ordinances, provided this will not impair plaintiff's existing contract rights or take its property without due process of law.

I regard the case as ruled by Knoxville Water Co. v. Knoxville, 200 U. S. 22, 26 S. Ct. 224, 50 L. Ed. 353, and Madera Waterworks v. Madera, 228 U. S. 454, 33 S. Ct. 571, 57 L. Ed. 915. Nothing in either the franchise or the rate ordinance can be construed as a surrender by the municipality of its right to construct and operate its own electric plant to serve its own inhabitants. In the former case it is said that "the intention to do so must be manifested by words so clear as not to admit of two different or inconsistent meanings." Page 34 of 200 U. S., 26 S. Ct. 224, 228.

Plaintiff claims that, while not expressed in words, this surrender of power is the "inevitable implication" of the provisions of the ordinances. On the motion to dismiss, the court held in respect of the street lighting contract, wherein the village agreed to take and pay for this particular service, that such implication did arise, and cited City of Walla Walla v. Walla Walla Water Co., 172 U. S. 1, 19 S. Ct. 77, 43 L. Ed. 341, and City of Vicksburg v. Waterworks Co., 202 U. S. 453, 26 S. Ct. 660, 50 L. Ed. 1102, 6 Ann. Cas. 253. But nothing in this record makes that rule applicable to the franchise or rate ordinance. In Madera Waterworks v. Madera, supra, it is said, at page 456 of 228 U. S., 33 S. Ct. 571:

"There is no pretense that there is any express promise to private adventurers that they shall not encounter subsequent municipal competition. We do not find any language that even encourages that hope, and the principles established in this class of cases forbid us to resort to the fiction that a promise is implied.

"The constitutional possibility of such a ruinous competition is recognized in the cases, and is held not sufficient to justify the implication of a contract."

Plaintiff argues that the ordinances and contract for street lighting and pumping were merely parts of one entire agreement, which will be impaired by the violation of that branch relating to street lighting. Its argument is unsound. The documents speak for themselves. They deal separately with separate features of a general subject, but contain no language making of them a single contract.

The Power Company makes much of the fact that under the rate ordinance the parties conducted an arbitration; that the arbitrators took as a base for the new rates the value of all plaintiff's property and the total number of its private consumers and thereupon agreed upon commercial rates which were lower by about 22½ per cent. in the case of private consumers, except the college, as to which the reduction was about 19 per cent., than the ordinance rates; the rates fixed under the street lighting contract being at the same time reduced by about $425 a year. By consent of the parties these latter rates were included in the arbitration. Plaintiff's contention is that the application of these reduced rates will amount to a taking of its property without due process of law. The court does not agree to that proposition, which is directly contrary to the holdings in the cases cited supra.

Plaintiff claims an estoppel against the village, arising out of the arbitration, and the assurance which it believed it had from members of the council prior to making the contracts that no municipal plant would be erected. Assuming the village to have the power to exclude itself from any service except that covered by the street lighting contract by any means other than a contract in which such an exclusion is either clearly expressed or inevitably implied, which I think extremely doubtful, the evidence is not sufficient to raise the estoppel claimed. For this plaintiff relies largely on the arbitration. But that was expressly provided for in the rate ordinance and was not conditioned upon the town remaining out of the competitive field. True, neither the rate ordinance nor the street lighting contract provided for arbitrating rates in the latter; but to this the parties agreed, and the only effect of the arbitration upon that contract was to amend it with respect to the rates which were somewhat lowered. It may be that after the municipality puts up its plant, the conditions will be so changed that the rates fixed by arbitration, at a time when the Power Company was furnishing all the service of both classes, will no longer be regarded binding upon the town—a question which, of course, is not decided.

The evidence of assurances by the council is wholly vague and unsatisfactory. No witness testified that any member of the council either had authority to state, or did

state, that no municipal plant would be constructed or purchased. The minutes and proceedings contain nothing on that subject, and the village would not be bound by assurances of individual councilmen not in the form of official action in any event.

Plaintiff relies largely on Ricaby v. McCrory Stores Corporation, 35 F.(2d) 14, 16 (6 C. C. A.). In that case our Circuit Court of Appeals said, among other things: "In such a case there is an implied contract on the part of the grantor of the option not to destroy the valuable right which he has granted." This was perhaps the leading principle of the decision, but that was a case dealing entirely with private contract rights. It had no reference whatever to the powers of an Ohio municipality bargaining for the rights of the public; and I think it has no application to this situation.

Decree will be entered in favor of the plaintiff as above indicated, in respect only of the street lighting and pumping contract and ordinance under which it was executed; and this will be shown to be by consent of the defendants. In respect of all other matters and relief prayed, finding and decree is in favor of the defendants. The parties will pay their own costs.