## WEST TENNESSEE POWER & LIGHT CO. v. CITY OF JACKSON et al.
### No. 96.

District Court, W. D. Tennessee, E. D.
Oct. 25, 1937.

Waring, Walker & Cox, of Memphis, Tenn., for plaintiff.

W. P. Moss, City Atty., of Jackson, Tenn., for defendants.

MARTIN, District Judge.

The bill filed herein by the plaintiff public utility corporation seeks to enjoin the defendant municipality, its mayor and commissioners, from erecting, operating, and maintaining, an electrical distribution system for the purpose of furnishing electric current and power to its citizens, and from effectuating a contract between the municipality and the Tennessee Valley Authority for the resale or distribution of electric current to its citizens, and from supplying or selling to its inhabitants, in competition with plaintiff, electric current, power, or energy for domestic or commercial purposes.

It is prayed, further, that this court declare void the contract between the defendant municipality and the Tennessee Valley Authority, in so far as the same relates to the resale of electric current by the city, and that the city be enjoined from issuing or selling bonds authorized by a special election to effectuate the aforementioned plans of which plaintiff complains.

Simultaneous hearing has been had upon the application of plaintiff for a temporary injunction, and upon the motion of defendants to dismiss the bill for want of equity.

The claim of the plaintiff public utility corporation is based upon certain ordinances of the city of Jackson, granting power and light and street railway franchises to predecessor corporations, to whose rights and interest the plaintiff lawfully succeeded. In certain of these ordinances, the *sole and exclusive* privilege of manufacturing, distributing, and selling electric light, heat, and power within the city of Jackson was granted to plaintiff's predecessors. These pertinent ordinances were enacted pursuant to appropriate legislative authority, and the last expiration date of the franchises granted was fixed as May 23, 1937.

In 1909, the Legislature of Tennessee enacted: "That the Board of Mayor and Aldermen of the city of Jackson shall have power and authority to provide for the erection and maintenance of telephone exchanges or other mediums of communication by electricity or otherwise; to provide fire alarms; *to provide for the lighting and heating of the city by gas, electricity, or otherwise;* and to provide for the building of street railways to be operated by any approved motive power; and to effectuate any or all of these objects they may contract with any individuals or corporations, and grant them the use of the streets and alleys of the city for such period as they may deem proper; provided, always, that no contract shall be entered into or right granted to individuals or corporations not consistent with the general laws of the land and with the object of this incorporation; and, provided, also, that *no exclusive right or franchise* in the streets and avenues *shall be granted to any person, firm, or corporation.*" (Italics ours.) Acts of Tennessee 1909, c. 407, § 22.

On October 21, 1913, the city of Jackson ordained the extension, until October 21, 1963, of all the rights, privileges, and franchises of plaintiff's predecessor public utility corporation under all ordinances theretofore passed by the municipality; *"such rights and franchises so extended to be subject to the terms and conditions of*

*the ordinance granting the same, except as modified or amended by the provisions of this ordinance."* (Italics ours.)

In 1928, the plaintiff lawfully acquired all the rights, privileges, franchises, and property of its predecessor, the Jackson Railway & Light Company, to which the above-described franchise extension had been granted.

Counsel for plaintiff contend that, when considered together, three decisions of the Supreme Court of the United States sustain the right to the injunctive relief sought in this suit: Walla Walla City v. Walla Walla Water Company, 172 U.S. 1, 19 S.Ct. 77, 43 L.Ed. 341; Vicksburg Waterworks Co. v. Vicksburg, 185 U.S. 65, 22 S.Ct. 585, 46 L.Ed. 808; Vicksburg v. Vicksburg Waterworks Co., 202 U.S. 453, 26 S.Ct. 660, 50 L.Ed. 1102, 6 Ann.Cas. 253.

Each of these three cases relied upon by plaintiff seem distinguishable in fact from the case at bar.

In the first cited, Walla Walla City v. Walla Walla Water Company, supra, the city expressly agreed in its contract with the water company that, except upon the latter's default, the city should not erect, maintain, or become interested in any waterworks other than those of the Walla Walla Company, unless by condemnation of the property of that company in the manner provided in the contract. In the case at bar, in no ordinance, or contract between the city of Jackson and the power company, is to be found any express agreement by the city against the erection, operation, or maintenance by the city itself of an electrical distribution system furnishing electric current and power to its own citizens.

In the Walla Walla Case, supra, the court pointed out that there was no attempt made to create a monopoly, by granting an exclusive right to the water company. In the case at bar, the ordinance vesting the contractual rights of plaintiff extended for 50 years a prior ordinance, granting the sole and exclusive privilege to the public utility company to manufacture, distribute and sell electric light, heat, and power within the city of Jackson, in defiance of a legislative inhibition against the granting of such exclusive right or franchise to any person, firm or corporation.

Vicksburg Waterworks Co. v. Vicksburg, 185 U.S. 65, 22 S.Ct. 585, 46 L.Ed. 808, being decisive only of a jurisdictional question, has been considered by the court merely to obtain the factual background for consideration of Vicksburg v. Vicksburg Waterworks Co., 202 U.S. 453, 26 S. Ct. 660, 50 L.Ed. 1102, 6 Ann.Cas. 253, heavily depended upon by counsel for plaintiff.

In the latter case, under the laws of Mississippi, there was no inhibition against the granting by the city for a limited period of an exclusive waterworks contract, at the time the exclusive contract with the Vicksburg Waterworks Company was made. On the facts of the case at bar, there was a plain legislative inhibition against an exclusive grant at the time of the extension of the franchise upon which plaintiff's rights rest. This distinction is all-important. While the language of the Vicksburg contract and the language of the ordinance involved herein is similar, it must be remembered that legislative authority and legislative inhibition furnish the antithesis. In the Vicksburg Case (202 U.S. 453, 469, 26 S.Ct. 660, 665, 50 L. Ed. 1102, 6 Ann.Cas. 253), the Court said: "In considering this contract, we are to remember the well-established rule in this court which requires grants of franchises and special privileges to be most strongly construed in favor of the public, and that, where the privilege claimed is doubtful, nothing is to be taken by mere implication as against public rights. This rule has been applied to a series of contracts in waterworks & lighting cases, and we have no disposition to detract from its force and effect."

The court cites Knoxville Water Company v. Knoxville, 200 U.S. 22, 26 S.Ct. 224, 50 L.Ed. 353, decided at the same term, in which it had been held that although a contract between a waterworks company and a municipality provided that no contract or privilege would be granted to furnish water to any other person or corporation, the city was not, in the absence of a special stipulation to that effect, precluded from establishing its own independent system of water works.

In Knoxville Water Company v. Knoxville, supra, the court approved the established rule that public grants susceptible of two constructions must receive the one most favorable to the public. Hamilton Gas Light & Coke Co. v. Hamilton City, 146 U.S. 258, 268, 13 S.Ct. 90, 36 L.Ed. 963; Skaneateles Waterworks Co. v. Skaneateles, 184 U.S. 354, 363, 22 S.Ct. 400, 46 L.Ed. 585; Stein v. Bienville Water

Supply Co., 141 U.S. 67, 81, 11 S.Ct. 892, 35 L.Ed. 622.

In Knoxville Water Company v. Knoxville, supra, the court said (200 U.S. 22, 37, 38, 26 S.Ct. 224, 229, 50 L.Ed. 353): "It is, we think, important that the courts should adhere firmly to the salutary doctrine underlying the whole law of municipal corporations and the doctrines of the adjudged cases, that grants of special privileges affecting the general interests are to be liberally construed in favor of the public, and that no public body, charged with public duties, be held, upon mere implication or presumption, to have divested itself of its powers."

Helena Water Works Co. v. Helena, 195 U.S. 383, 25 S.Ct. 40, 49 L.Ed. 245, presented the situation of the establishment by a city of its own system of waterworks in competition with that of a private company. In observing that the city had not specifically bound itself not to construct its own plant, the court said (195 U.S. 383, 392, 25 S.Ct. 40, 43, 49 L.Ed. 245): "Had it been intended to exclude the city from exercising the privilege of establishing its own plant, such purpose could have been expressed by apt words, as was the case in Walla Walla City v. Walla Walla Water Company, 172 U.S. 1, 19 S.Ct. 77, 43 L.Ed. 341. It is doubtless true that the erection of such a plant by the city will render the property of the water company less valuable, and perhaps, unprofitable, but if it was intended to prevent such competition, a right to do so should not have been left to argument or implication, but made certain by the terms of the contract."

See, also, Long Island Water-Supply Co. v. Brooklyn, 166 U.S. 685, 17 S.Ct. 718, 41 L.Ed. 1165; Washington & B. Turnpike Co. v. State of Maryland, 3 Wall. 210, 213, 18 L.Ed. 180.

Joplin v. Southwest Missouri Light Co., 191 U.S. 150, 156, 24 S.Ct. 43, 44, 48 L.Ed. 127, presented the question whether a city could establish its own electric plant in competition with that of a private corporation. The court used this strong expression: "The limitation contended for is upon a governmental agency, and restraints upon that must not be readily implied. The appellee concedes, as we have seen, that it has no exclusive right, and yet contends for a limitation upon the city which might give it (the appellee) a practical monopoly. Others may not seek to compete with it, and if the city cannot, the city is left with a useless potentiality, while the appellee exercises and enjoys a practically exclusive right. There are presumptions, we repeat, against the granting of exclusive rights, and against limitations upon the powers of government."

In Madera Waterworks v. Madera, 228 U.S. 454, 33 S.Ct. 571, 57 L.Ed. 915, it was sought to restrain a city from constructing a water plant in competition with a company which had built a plant pursuant to the State Constitution, which provided that, in any city where there are no public works owned by the municipality for supplying water, any individual or corporation has the privilege of using public streets for the purpose of supplying water to the citizens, subject to the right of the municipal government to regulate charges. Injunctive relief was denied. Mr. Justice Holmes, delivering the unanimous opinion of the court, said (228 U.S. 454, 456, 33 S.Ct. 571, 572, 57 L.Ed. 915): "So strictly are private persons confined to the letter of their express grants that a contract by a city not to grant to any person or corporation the same privileges that it had given to the plaintiff was held not to preclude the city itself from building waterworks of its own. Knoxville Water Co. v. Knoxville, 200 U.S. 22, 35, 26 S.Ct. 224, 50 L.Ed. 353. Compare Vicksburg v. Vicksburg Waterworks Co., 202 U.S. 453, 470, 26 S.Ct. 660, 50 L.Ed. 1102, 6 Ann.Cas. 253."

In a recent decision of the Supreme Court, it has been again recognized that, in the absence of any contract restriction, a municipality may conduct a public waterworks in competition with private business, even to the point of taxation of the private business to aid the city's success. Puget Sound Power & Light Co. v. Seattle, 291 U.S. 619, 54 S.Ct. 542, 78 L.Ed. 1025. Mr. Justice Stone said (291 U.S. 619, 624, 54 S. Ct. 542, 545, 78 L.Ed. 1025): "In conducting the business by state authority, the city is exercising a part of the sovereign power of the state which the Constitution has not curtailed. The decisions of this Court leave no doubt that a state may, in the public interest, constitutionally engage in a business commonly carried on by private enterprise, levy a tax to support it, Green v. Frazier, 253 U.S. 233, 40 S.Ct. 499, 64 L.Ed. 878; Jones v. Portland, 245 U.S. 217, 38 S.Ct. 112, 62 L.Ed. 252, L.R.A.1918C, 765, Ann.Cas.1918E, 660, and compete with private interests engaged in a like activity. Standard Oil Co. v. Lincoln, 275 U.

S. 504 [48 S.Ct. 155, 72 L.Ed. 395]; Madera Waterworks v. Madera, 228 U.S. 454, 33 S.Ct. 571, 57 L.Ed. 915; Helena Water Works Co. v. Helena, 195 U.S. 383, 25 S.Ct. 40, 49 L.Ed. 245. * * * The municipality, which is enabled to function only because it is a tax gatherer, may acquire property or conduct a business in the interest of the public welfare, and its gains, if any, must be used for public ends. Hence equal protection does not require a city to abstain from taxing the business of a corporation organized for profit merely because in the public interest the municipality has acquired like property or conducts a like business." Cf. West Missouri Power Co. v. City of Washington, 80 F. (2d) 420 (C.C.A. 10, January 2, 1936); Ohio Electric Power Co. v. Village of Oberlin, 9 F.Supp. 469 (D.C.N.D.Ohio).

In the last-cited case, Judge West held that proceedings for the issuance and sale of bonds for a municipal electric plant and village ordinances were not invalid as impairing the obligation of franchise and rate ordinances, which contained no provision whereby the village bound itself not to build or acquire its own plant, since the ordinances did not operate as a surrender by the village of its right to construct and operate its own plant.

One hundred years ago, the Supreme Court held, in the frequently-cited opinion of Chief Justice Taney, that where the charter of a bridge corporation contained no express contract that the state would not authorize another bridge to be built to the injury of the corporation, no such contract could be implied, and that a law empowering another corporation to erect and maintain a free bridge so near to the first as practically to deprive the first corporation of all toll, was not a law impairing the obligation of any contract. Charles River Bridge v. Warren Bridge, 11 Pet. 420, 536, 9 L.Ed. 773.

Adhering to the principle of this landmark case, that "in grants by the public nothing passes by implication," the Supreme Court of Tennessee held, in Turnpike Co. v. Montgomery County, 100 Tenn. 417, 45 S.W. 345, 58 L.R.A. 155, that a turnpike company whose charter does not confer an exclusive franchise acquires no right of action against a county for the destruction or diminution of its business and revenues by reason of the erection, for the public convenience, under order of the county court, of a free competing bridge or road.

Upon the principles discussed in the foregoing review of the authorities, it seems obvious that a public utility corporation holding a municipal public service franchise, the exclusiveness of which rests upon the invalid renewal by an extension ordinance which, contrary to express inhibition of state statute, renews a sole and exclusive franchise granted in an earlier ordinance, cannot prevail in a complaint against the action of the municipality in entering upon competitive business with the plaintiff public utility corporation, where no express agreement has been made by the municipality not to do so.

Accordingly, it follows that the injunction sought by plaintiff public utility corporation is denied, and the motion of the defendant municipality to dismiss the bill for want of equity is allowed.